907 P.2d 496

STATE of Arizona, Appellee,

v.

Craig Richard FLEMMING, Appellant.

No. CR–94–0428–PR.

Supreme Court of Arizona,
En Banc.

Dec. 5, 1995.

Grant Woods by Paul J. McMurdie, Chief Counsel, Criminal Appeals Division, Robert S. Golden, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy County Public Defender, Phoenix, for Appellant.

## OPINION

MOELLER, Vice Chief Justice.

### PROCEDURAL BACKGROUND

Defendant's probation was revoked in a Maricopa County case and he was sentenced to two years imprisonment to be served consecutively to sentences he was serving in a Pinal County case. In a published opinion, the court of appeals rejected defendant's argument that he should not have been found to be in "automatic" violation of his probation because Rule 27.7(e), Ariz.R.Crim.P., which permits such findings, did not apply to his case. *See State v. Flemming,* 182 Ariz. 239, 240, 895 P.2d 1002, 1003 (App.1994). The court of appeals also rejected defendant's argument that the petition to revoke should have been dismissed because of untimely prosecution. *Id.* at 242, 895 P.2d at 1005. We granted review to consider the propriety of those two rulings by the court of appeals. We have jurisdiction pursuant to Ariz. Const.

art. VI, § 5(3), and Ariz.R.Crim.P. 31.19. We reverse.

## FACTS

On December 5, 1988, Craig Flemming, the defendant, pled guilty in Maricopa County Superior Court to attempted robbery. Flemming had attempted to rob a Thrifty drugstore of about $130 by snatching the cash from the register as the cashier opened the drawer. The court suspended imposition of sentence and placed defendant on probation for three years. While on that Maricopa County probation, Flemming was arrested in Pinal County in November 1990, on various charges involving the sale and possession of marijuana.

Based upon his arrest in Pinal County and his failure to pay a monthly probation fee, the Maricopa County Probation Department filed a petition to revoke Flemming's probation, and the Maricopa court issued a warrant for his arrest on December 3, 1990. No action was taken on the petition or the warrant by the state, the court, the prosecutor, or the probation office at that time.

Because of Flemming's status as a probationer, he was held in the Pinal County jail without bond pending resolution of his Pinal County charges. On October 21, 1991, some eleven months after his arrest, defendant pled guilty to two of the Pinal County charges, agreeing to stipulated sentences in return for certain concessions by the state. The Pinal County trial judge who took the plea made sure Flemming understood that the plea could be used against him in a probation violation hearing in Maricopa County and that he could receive a consecutive sentence at that hearing. Flemming asked the court when the proceedings on the probation violation would take place, but the judge did not know. Flemming's lawyer indicated that defendant was in "warrant status" on his "probation violation" but that proceedings had not yet been initiated. The prosecutor did not know what, if anything, had been done in Maricopa County.

Pursuant to the plea agreement, defendant was sentenced in Pinal County on November 18, 1991, to concurrent terms of seven and ten years. The presentence report reflected that defendant's Maricopa County probation officer, Elizabeth Maceo, had advised that revocation proceedings were pending defendant's return to Maricopa County and that she "anticipate[d] submitting a recommendation for a presumptive incarceration in the Arizona Department of Corrections concurrent to any sentence imposed in this matter."

Following sentencing in Pinal County, defendant was transported to the Department of Corrections to begin his prison term. Several times during his incarceration he inquired of the Department of Corrections whether there were any "holds" on him and was told that there were none. Ultimately, he became concerned that he might someday reach his parole eligibility date and find the Maricopa County charge still extant. Accordingly, on his own initiative, he filed what he described as a "speedy execution form" to bring the matter to a head. The Maricopa County Attorney's office then petitioned to bring defendant to Maricopa County on the probation violation on March 9, 1993, more than twenty-seven months after the filing of the petition to revoke and the issuance of the warrant. Three days later the Maricopa court issued an order for defendant's presence and, on March 16, 1993, the warrant was served.[1]

On March 23, 1993, defendant appeared before a judge pro tempore in the Maricopa County Superior Court. No revocation arraignment was held on the petition to revoke, and no probation violation hearing was held. The judge pro tempore, the prosecutor, and the defense counsel were operating on the assumption that the Pinal County plea agreement made the violation "automatic." The only record of the Pinal County proceedings in court at that time was a copy of the plea agreement that the defendant had brought with him.

---

1. This was more than fourteen months after defendant's probation expired by its terms. The parties have not addressed this fact and it is not mentioned by the trial court or the court of appeals. Accordingly, we ignore this additional issue and restrict our discussion to the two questions specified *infra*.

The judge pro tempore asked whether Flemming had been informed that he would be found in automatic violation of his probation. Flemming responded that he had been so informed, and that the plea agreement had been determined acceptable in part because Elizabeth Maceo, the monitoring probation officer, recommended that the probation violation run concurrent to the sentence imposed. Flemming said he was ready to proceed and would accept any sentence so long as it ran concurrently. The judge pro tempore informed Flemming that Maceo's recommendation was not binding on the court. Defense counsel asked the judge pro tempore to proceed to sentencing. Ultimately, the judge pro tempore concluded that she could not have a disposition hearing that day, and she reset it for April 6, 1993.

When defendant appeared again on April 6, it was before a different judge pro tempore. Probation officer Elizabeth Maceo was not present but was represented by another probation officer who conveyed Maceo's recommendation of a concurrent presumptive term. Although the state did not object to the recommendation, and although the pro tempore judge was advised concerning the circumstances of the delay, she nevertheless ordered consecutive sentencing, stating that she was bound to do so in the absence of evidence which "mitigates the fact that you committed these crimes while you were on probation. I have to find a reason in order to run a sentence concurrently, and I don't have a reason that exists on this record."

■ On review, the court of appeals rejected defendant's arguments that he should not have been held in automatic violation under Rule 27.7(e) and that the petition to revoke should have been dismissed for untimely prosecution.[2] We granted review to consider the correctness of those two rulings.

### ISSUES PRESENTED

1. Under Rule 27.7(e), Arizona Rules of Criminal Procedure, may a superior court in one county find a defendant in automatic

violation of his probation in that county based on a finding of guilt by a superior court in another county?

2. Did Maricopa County bring the probation violation proceeding to a timely resolution under Rule 27.7?

### I. Improper Probation Violation Procedure

■ A defendant may, of course, be found in violation of his probation for committing a crime in another county. Indeed, we recognize that in many such cases defendants will admit to probation violations when they have pled to, or been found guilty of, a crime in another county. This case is not about whether a defendant may be found in violation by reason of an out-of-county crime. This case is about the procedure that is to be used for making that determination.

■ In the typical case, the Rules of Criminal Procedure and considerations of due process contemplate that there will be three court proceedings before a defendant's probation is revoked and he is sentenced because of a probation violation. The first court proceeding is a revocation arraignment to determine whether the defendant wishes to admit or deny the allegations of the petition to revoke. Rule 27.7(a), Ariz.R.Crim.P. Next comes the violation hearing to determine whether those defendants who have denied any violation have, in fact, violated their probation. Rule 27.7(b), Ariz.R.Crim.P. The third court proceeding is a disposition hearing, usually held after preparation of a presentence report, at which the trial judge, after listening to arguments or evidence concerning aggravation and mitigation, determines and imposes the appropriate disposition. Rule 27.7(c) Ariz.R.Crim.P.

However, Rule 27.7(e), Ariz.R.Crim.P., provides an exception to the usual procedure. It states:

If there is a determination of guilty, as defined by Rule 26.1(c) of a criminal offense *by the court which placed a proba-*

---

**2.** The court of appeals correctly noted that defendant had not raised the Rule 27.7(e) issue in the trial court. Nevertheless, the court of appeals reached the merits of the issue in a published

opinion. *State v. Flemming,* 182 Ariz. 239, 895 P.2d 1002 (App.1994). Accordingly, we must also address the merits of the issue.

*tioner on probation,* no violation hearing shall be required and the court shall set the matter down for a disposition hearing *at the time set for entry of judgment on the criminal offense.*

(Emphasis added.)

In this case, the court of appeals invoked Rule 27.7(e) to dispense with the revocation arraignment and violation hearing steps of the revocation procedure and held that defendant had correctly been found to be in automatic violation of his Maricopa County probation because of his guilty plea in Pinal County. The court reasoned that because "[t]here is but one superior court in the state of Arizona," *Flemming,* 182 Ariz. at 241, 895 P.2d at 1004 (quoting *Massengill v. Superior Court,* 3 Ariz.App. 588, 591, 416 P.2d 1009, 1012 (1966)), the automatic violation provision of Rule 27.7(e) applies whenever a superior court probationer in Arizona is determined to be guilty of a new offense anywhere in an Arizona superior court.

■ In general, we agree with the court of appeals that there is only one superior court in the state of Arizona. *See* Ariz. Const. art. VI, § 1; *see also Massengill,* 3 Ariz.App. at 591, 416 P.2d at 1012. The question presented in this case, however, is not how many superior courts there are in Arizona but, instead, the proper interpretation and application of Rule 27.7(e). The intent of the rule is to allow the court handling both the probation violation proceeding and the new criminal proceeding to consolidate the two cases in the interest of judicial economy. *See State v. Johnson,* 117 Ariz. 9, 11, 570 P.2d 780, 782 (App.1977). That was not done here.

■ According to the court of appeals' approach, because there is only one superior court in the state, a trial judge must always consolidate a probation violation hearing and an underlying criminal proceeding, even if the two cases come from different counties. Thus, under the rationale of the court of appeals, the Pinal County court itself had the defendant on probation and should have set the disposition hearing on the Maricopa County case at the same time as the sentencing in the Pinal County case. That was not

done here, nor do we believe it should or could have been done. The Pinal County court should not be expected to make an appropriate disposition in the probation case without having access to the file. The Pinal County court correctly recognized that the probation revocation was a Maricopa County matter.

■ We believe the court of appeals misapplied Rule 27.7(e). The intent of the rule is to require consolidation and simultaneous dispositions in cases falling within the rule. To have a meaningful sentencing in a criminal case, the trial court must have before it the file in that case including any and all presentence reports, plea agreements, and related documents. By the same token, to have a meaningful disposition in a probation violation proceeding, the court must also have the files for the probation case. If it were intended that the Pinal County judge taking a plea to the new offense would also inherit the Maricopa County probation case, the rules would have had to implement some requirements concerning the transfer of files and the like. The rules do not so provide, nor do we believe that they should. The procedure mandated by acceptance of the court of appeals' opinion would be impractical.

■ Nothing in this opinion should be read as disagreeing with the holdings of *State v. Astorga,* 26 Ariz.App. 260, 547 P.2d 1060 (1976), and *State v. Shapiro,* 26 Ariz. App. 536, 549 P.2d 1054 (1976), that, in order to invoke the automatic violation provisions of Rule 27.7(e), it is not necessary that the judge presiding at the new proceeding be the same judge that presided at the proceedings that led to probation, provided the judge is of the same superior court. In those situations, consolidation is in the interest of judicial economy and both files are available to the judge; exactly the type of situation contemplated by the rule.

Instead of finding an automatic violation, the Maricopa County superior court should have proceeded with the revocation arraignment under Rule 27.7(a). If defendant desired to admit a violation, the court would proceed according to the requirements of Rule 27.8. If defendant denied violating his

probation, the trial court would set a violation hearing pursuant to Rule 27.7(b). Once defendants are found guilty or have pled guilty to a new offense in another county, they will rarely be able to contend successfully that they have not violated their probation. Nevertheless, absent admissions or plea agreements, it does not seem too much to ask the state to provide some evidence of the new finding of guilt. Because the defendant was improperly held in "automatic violation" of his probation, we must set aside the finding of violation and the sentence that flowed from that finding. Having reached that conclusion, we must determine the appropriate disposition of this case. That brings us to the issue of timeliness.

## II. Timeliness of Probation Revocation

[11] Due process provides a paroled prisoner with a right to "some minimal inquiry ... at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972). "[A] probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer....*" *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973). Arizona courts have consistently recognized that *Gagnon* and *Morrissey* protect the defendant's right to due process in the context of probation revocation proceedings. *See State v. Flowers*, 159 Ariz. 469, 471, 768 P.2d 201, 203 (App.1989) (holding that "a person alleged to have violated probation is entitled to the minimum due process rights guaranteed by the fourteenth amendment ... and by the Arizona Constitution"); *State v. Reidhead*, 152 Ariz. 231, 234, 731 P.2d 126, 129 (App. 1986), *overruled on other grounds by State v. Georgeoff*, 163 Ariz. 434, 437, 788 P.2d 1185, 1188 (1990) (same); *State v. Gray*, 115 Ariz. 150, 152, 564 P.2d 101, 103 (1977) (holding that, although *Morrissey* requires a revocation hearing within a reasonable time after the probationer is taken into custody, delay was not unwarranted where it was the result of logistical difficulties between courts in different counties and defendant had shown no prejudice).

This court has previously expressed "disapproval of the practice of deferring the hearing on probation revocation until after the adjudication of guilt or innocence on the new criminal charge...." *State v. Jameson*, 112 Ariz. 315, 318, 541 P.2d 912, 915 (1975). In evaluating the reasonableness of the delay, courts have focused on three factors: length of the delay, reasons for the delay, and prejudice to the defendant. *See, e.g., Commonwealth v. Young*, 262 Pa.Super. 253, 396 A.2d 741, 742–43 (1978). Courts in other jurisdictions have recognized that a trial court may lose the power to conduct a probation violation proceeding if it does not proceed within a reasonable time. *See, e.g., People v. Williams*, 10 Ill.App.3d 428, 294 N.E.2d 61, 63 (1973). The Supreme Court of Louisiana has stated: "Where the state can execute a warrant timely but makes no attempt to do so, the running of the probationary period is not suspended, and a subsequent untimely revocation will be declared illegal." *State v. Rome*, 392 So.2d 407, 410 (La.1980).

The time periods set forth in Rule 27.7 were adopted to ensure that a probationer's due process rights are not violated by undue delay in probation revocation procedures. Absent any court-approved continuances, Rule 27.7 establishes a twenty-one to forty-seven day period from the service of summons or arrest on a warrant in a probation revocation proceeding to the disposition hearing. Rule 27.7(a)–(c), Ariz.R.Crim.P. In this case, although the defendant was in the custody of the state, more than twenty-seven months elapsed. The state has never attempted to explain or excuse this delay. The revocation proceedings were initiated only because of action taken by the defendant.

The time limits of Rule 27.7 are not jurisdictional. When the defendant requests a brief delay, his due process rights to a timely hearing are not violated. *See State v. Long*, 148 Ariz. 295, 296, 714 P.2d 465, 466 (App.1986). It has also been held that when the time limits set forth in Rule 27.7 cannot

be met because of a logistical problem between different counties, a defendant's due process rights are not violated. *Gray*, 115 Ariz. at 152, 564 P.2d at 103. However, in *Jameson*, 112 Ariz. at 318, 541 P.2d at 915, we emphasized that "[t]he question of whether the accused has violated the terms of his probation should be promptly resolved," and we expressly disapproved of the practice of continuing the probation violation hearing until after disposition of the new criminal charges. We voiced this disapproval in *Jameson* even though the defendant had requested the delay.

In *State v. Fahringer*, 136 Ariz. 414, 415, 666 P.2d 514, 515 (App.1983), the defendant asked the trial court to continue a revocation hearing until after the trial on the new charges. The trial court granted the request. The court of appeals, relying on *Jameson*, held that it was an abuse of discretion for the superior court to grant the delay. These cases demonstrate that both the parties and the criminal justice system itself have an interest in speedy dispositions of probation revocation proceedings.

■ Here, Maricopa County failed to prosecute the revocation for more than twenty-seven months after the petition to revoke was filed. It acted only after the defendant took the initiative. Probation officials have provided no explanation for this unseemly delay. Because the trial court improperly found defendant in automatic violation under Rule 27.7(e), we have concluded that the finding of probation violation and resultant sentencing must be set aside. If we were to remand now and permit the revocation proceeding to begin anew, defendant would be faced with an even more untimely allegation of probation violation. What he sought to avoid all along, with good reason, would be played out in a Kafkaesque scene. Defendant's probation expired more than three years ago.

The court of appeals, because it affirmed the validity of the trial court proceedings, was not faced with the prospect of remanding

the case to start over at this late date. With respect to the delay that had already occurred, the court of appeals rejected defendant's argument that the revocation should be vacated. The court said that it did not condone the delay. *Flemming*, 182 Ariz. at 242, 895 P.2d at 1005. Although it held that the automatic violation provisions of Rule 27.7(e) applied because the Maricopa County Superior Court and the Pinal County Superior Court were the "same court," it nevertheless excused the delay because "the involvement of different counties" was a persuasive element in excusing the delay.[3] *Flemming*, 182 Ariz. at 241–42, 895 P.2d at 1004–05.

The court of appeals also held that the defendant had not demonstrated any prejudice from the delay because "[h]e was incarcerated during the delay and the purpose of a prompt hearing is to hold the proceeding 'while information is fresh and sources are available.'" *Flemming*, 182 Ariz. at 242, 895 P.2d at 1005 (citing *Morrissey*, 408 U.S. at 485, 92 S.Ct. at 2602). We fail to see how defendant's incarceration negates the need for fresh sources of information.

■ We do not know what would have happened had the proceedings occurred when they should have. Had defendant's probation been revoked in a timely manner, it seems entirely reasonable that his later Pinal County plea agreement would have included a stipulation that the Pinal County sentences be concurrent to the Maricopa County sentence, a condition which seemed acceptable to everyone at the time of the plea agreement. Because the Maricopa County proceeding was dormant, the Pinal County court correctly recognized that it could not bind the Maricopa County court on the unresolved probation violation proceedings. Even if we were to hypothesize a lack of prejudice to the defendant, the court has an obligation to give some meaning to its rules which are, after all, designed to provide for the type of due process mandated by the Constitution. Neither those rules, nor the Constitution, contemplates that probation

---

**3.** We have previously noted that if the court of appeals' reading of Rule 27.7(e) were the correct one, Pinal County should itself have disposed of the probation revocation when it took defen-

dant's plea, and Maricopa County would not have been involved in the revocation proceedings. *See supra* at 114, 907 P.2d at 500.

revocation proceedings will begin after a lengthy prison term ends.

The delay on the part of the state has been significant. This delay is not only unexplained, it is inexplicable. To remand this case and begin anew would render the time limits of Rule 27.7 meaningless. Under these circumstances of extreme, unexplained delay, the petition to revoke should have been dismissed. *Williams,* 294 N.E.2d at 63; *Rome,* 392 So.2d at 409–10; *State v. Jones,* 285 So.2d 231, 233–34 (La.1973) (reversing judgment of revocation because of state's failure to timely execute warrant); *State v. Martens,* 338 So.2d 95, 96–97 (La.1976) (holding revocation of probation improper where state could have filed revocation warrant before the end of probationary period, but failed to do so).

### CONCLUSION AND DISPOSITION

The opinion of the court of appeals is vacated. The finding of probation violation is vacated, as is the sentence imposed as a result of that finding. This case is remanded to the superior court with directions to dismiss with prejudice the petition to revoke probation.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.