931 P.2d 1082

**STATE of Arizona, Appellee,**

v.

**Seymour Harold ADLER, Appellant.**

**No. 1 CA–CR 95–0166.**

Court of Appeals of Arizona, Division 1, Department B.

June 13, 1996.

As Corrected July 5, 1996.

Review Granted Feb. 26, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel—Criminal Appeals Section, Dawn M. Northup, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for Appellant.

OPINION

NOYES, Judge.

In July 1988 the State filed a petition to revoke the probation of Seymour Harold Adler ("Appellant"), a fugitive. Appellant was taken into federal custody in May 1990 and was still in federal custody in January 1995, when his probation was revoked in this case. The issue on appeal is whether the delay in revoking Appellant's probation was so unreasonable and prejudicial that it violated his constitutional right to due process of

law. The trial court found no such violation, and we affirm.

## I

Appellant headed a precious-metals investment swindle that defrauded Arizona victims of over $450,000. After pleading guilty to seven felonies and agreeing to make full restitution, Appellant was released on probation in August 1987. As a condition of probation, Appellant was ordered to pay $100,000 in restitution by August 5, 1988, or serve a year in the Maricopa County jail.

Arizona probation authorities gave Appellant permission to live in California, expecting that he would be supervised there. But California probation authorities refused to accept supervision of Appellant, and failed to communicate that fact to Arizona. Appellant disappeared. By March 1988 Arizona probation authorities knew that Appellant was gone; mail to his known addresses was returned to sender, his known phone numbers were disconnected (or were answering services that had never heard of him), and his sister had no idea where he was. By May 1988 the FBI was looking for Appellant regarding a pending federal indictment. In July 1988 Arizona probation officers filed a petition to revoke Appellant's probation. Almost two years later, in May 1990, Appellant was arrested in Seattle on federal charges for crimes similar to those for which he was on probation in Arizona.

In August 1990 Appellant pleaded guilty to several charges in the federal case, and in November 1990 he received sentences which amounted to eight years in prison and a release date in July 1995. The federal convictions exposed more of Appellant's fraudulent conduct than was known when he received probation in Arizona, as explained in his Arizona post-revocation presentence report:

> When the defendant was granted probation under this cause, the full extent of his criminal activities were unknown to the Court. In fact, at the time the presentence investigation was completed, the defendant stated in writing, "I don't consider myself a criminal, but a person who made bad business decisions." Unknown to the

Court then is the now proven facts, based on the defendant's federal convictions, that he, along with Reginald Dents, actually had numerous fraudulent business arrangements going on around the United States for more than three years; with the conviction in this cause being just a small piece of an otherwise large picture of fraud, scams, and illegal activities.

On December 16, 1991, Appellant filed a motion for a speedy trial or a final disposition *in absentia* on the petition to revoke his probation. In this motion, Appellant waived his right to be present at sentencing, but. only if he was reinstated on probation. The record contains no ruling on the motion. By letter dated December 20, 1991, the State notified Appellant that an Arizona detainer had been lodged against him for the probation violation. The letter stated that Arizona could not get custody of Appellant under the Interstate Agreement on Detainers ("IAD") because the act does not apply to detainers based on probation violations; therefore, Arizona could not resolve the probation violation matter until after Appellant completed his federal prison sentence. The letter concluded by stating that Arizona would consider Appellant for the Probation Reconciliation Program, and that he would be notified if he were eligible. Shortly thereafter, Appellant was evaluated for this program. On February 24, 1992, Appellant was declared ineligible for the program because he had failed to pay restitution and to serve a previously-ordered one-year jail term.

In October 1994, following a series of communications between Appellant's counsel and the Maricopa County Attorney's Office, Appellant filed a motion to dismiss the petition to revoke. At the December 1994 hearing on the motion, Appellant appeared telephonically and was represented by counsel. The trial court denied the motion and set a violation hearing at which Appellant appeared by telephone and his counsel appeared personally.

After the hearing, the court issued a minute entry dated January 6, 1995, finding that Appellant had wilfully violated orders to pay restitution and fees; to report monthly, in writing, to Arizona probation of-

ficials; to get approval prior to moving; to advise probation officials of changes of address or employment; and to cooperate with the Interstate Compact Program. The trial court revoked Appellant's probation and sentenced him to presumptive prison terms of four years on each count, concurrent with each other and consecutive to the federal sentences. Appellant was also ordered to pay restitution as set forth in a civil judgment.

We have jurisdiction of the appeal pursuant to Arizona Constitution article 6, section 9, and Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1) (1992), 13–4031 (1989), and 13–4033(A) (Supp.1995).

## II

■ To warrant dismissal of a petition to revoke probation because of delay in holding a hearing, the probationer "must demonstrate prejudice which resulted from the delay." *Padilla v. Superior Court,* 133 Ariz. 488, 490, 652 P.2d 561, 563 (App.1982). Appellant made no showing of prejudice. He offered only an affidavit claiming that he had phone contacts with the Arizona probation office in 1987, and that he could have produced those records if the hearing had been in 1991. But those 1987 records are immaterial; the petition to revoke alleged that Appellant failed to report to the probation office after March 1988. The affidavit also claims, "I was not made aware that I was to pay a $30.00 monthly probation service fee." But this fee is in the written terms of probation given to and signed by Appellant, and the trial court explained it to him at sentencing.

Appellant offered no defense to becoming a fugitive, and he made no showing that he was prejudiced by the delay in having a hearing on the petition which alleged, in various ways, that he violated probation by becoming a fugitive. Appellant did not argue that the delay prejudiced his opportunity to be reinstated on probation, or to have his state sentences run concurrently with his federal sentences. No prejudice having resulted from the delay, the trial court did not abuse its discretion in denying Appellant's motion to dismiss the petition.

The State gave the trial court several uncontradicted reasons to explain the delay between Appellant's federal arrest in May 1990 and his revocation hearing in January 1995: (1) The IAD is not applicable to probation revocation proceedings. *Carchman v. Nash,* 473 U.S. 716, 725, 105 S.Ct. 3401, 3406, 87 L.Ed.2d 516 (1985). (2) Arizona has no executive agreement by which it can obtain a federal prisoner. (3) The State did not use a writ of *habeas corpus ad prosequendum* because federal authorities frequently do not honor a state writ. (4) Appellant's counsel tried to produce Appellant with a writ and met with no success. (5) The State tried to resolve the matter by enrolling Appellant in the Probation Reconciliation Program, but Appellant was rejected because he had not served his jail term or paid his restitution. (6) Counsel for the State and counsel for Appellant had exchanged correspondence to try to resolve the matter, and these efforts continued up through the hearing on the motion to dismiss.

Appellant has arguable support in *State v. Flemming,* 184 Ariz. 110, 907 P.2d 496 (1995), which dismissed a petition to revoke probation because of the delay in bringing it to a hearing. We find *Flemming* distinguishable for several reasons:

(1) Flemming was an Arizona state prisoner and at all times within the jurisdiction of the state court. *Id.* at 112, 907 P.2d at 498. Appellant was a federal prisoner and at all times outside the jurisdiction of the state court.

(2) Flemming was imprisoned inside the state of Arizona. *Id.* Appellant was imprisoned outside the state of Arizona for some period of time, and the record is not clear when he was moved to an in-state federal facility.

(3) The delay in *Flemming* was "not only unexplained, it [was] inexplicable." *Id.* at 117, 907 P.2d at 503. In Appellant's case the delay was explained, and the trial court was persuaded.

(4) Flemming's probation officer agreed to recommend that the sentence in the revocation case run concurrently with the new sentences, but the delay prejudiced his opportu-

nity to receive concurrent sentences. *Id.* at 112, 116, 907 P.2d at 498, 502. Appellant had no such agreement, and no reasonable prospect of receiving concurrent sentences from an Arizona court that was aware of his probation violations and his federal convictions.

(5) In *Flemming,* the court "set aside the finding of violation and the sentence that flowed from that finding" for reasons unrelated to the delay. *Id.* at 115, 907 P.2d at 501. The *Flemming* court, therefore, had to either remand for rehearing—thus creating more delay—or dismiss the petition. We have no such complication here because there was no defect in the revocation itself. If we affirm the trial court's denial of the motion to dismiss, we also affirm the revocation of probation and the resulting sentences.

(6) By the time the supreme court reversed in *Flemming,* defendant's probation had expired "more than three years ago." *Id.* at 116, 907 P.2d at 502. Appellant's probation was revoked long before it expired; he became a fugitive shortly after being placed on probation, and a fugitive is not serving his probation. "The running of the period of probation shall cease during the unauthorized absence of the defendant from the jurisdiction...." A.R.S. § 13–903(C) (1989). Also, Appellant's probation could have been extended up to three years because he had not paid all his restitution. A.R.S. § 13–902(C)(1) (Supp.1995).

The dissent fairly criticizes the State for not trying to obtain Appellant with a writ of *habeas corpus ad prosequendum.* We agree with the dissent that the State's "reliance on the mere *possibility* that the writ would not be honored does not excuse its failure to request that the writ be honored." (Op. at 577, 931 P.2d at 1087.) But even if this one failure undermines the trial court's overall acceptance of the State's explanation for the delay, the fact still remains that Appellant showed no prejudice from the delay. Appellant made only frivolous arguments that the delay prejudiced his ability to defend against the petition to revoke.

The dissent would find the delay *per se* prejudicial, (op. at 578, 931 P.2d at 1088), but we think that such a holding would be an overreaction to the complicated facts and circumstances behind the delay here. The dissent argues that the State could have brought the petition to a hearing *in absentia,* and we agree. But Appellant could not have been *sentenced in absentia* absent his agreement. *See State v. Bly,* 120 Ariz. 410, 413, 586 P.2d 971, 974 (1978). The record contains no indication that Appellant *unconditionally* agreed to *in absentia* (or telephonic) sentencing before his motion to dismiss was denied.

In the final analysis, we hold that the trial court did not abuse its discretion in concluding that the State sufficiently explained the delay, that Appellant failed to prove any prejudice from the delay, and that there was no constitutional basis for dismissing the petition to revoke. The judgment of the trial court is therefore affirmed.

EHRLICH, J., concurs.

GRANT, Presiding Judge, dissenting.

I respectfully dissent from the majority in this instance because I believe that the trial court was mistaken in the two main areas of its decision. The delay in holding the revocation was unreasonable and it resulted in prejudice to Defendant.

**Reasonableness of the Delay**

Notwithstanding the flexibility inherent in due process, under the facts of this case, I cannot say the question of Defendant's probation violations was promptly resolved. Nor can I say the revocation proceedings were held "reasonably soon" after the probation violations occurred. The state claims it could not have proceeded any earlier with Defendant's probation revocation proceedings due to a variety of causes; the majority finds this question lies within the sound discretion of the trial court. I disagree.

As federal and Arizona cases demonstrate, the state had a duty to proceed promptly with probation revocation proceedings against Defendant. The state could have initiated revocation proceedings *in absentia.* Ariz. R.Crim. P. 27.9; *State v. Bly,* 120 Ariz. 410, 586 P.2d 971 (1978). Bly's probation was revoked *in absentia* after the trial court found he had violated the terms of his proba-

tion—terms nearly identical to those at issue here. A petition to revoke Bly's probation was filed and a bench warrant was issued, but a petition for revocation of his probation *in absentia* was not filed until fourteen months later. The Arizona Supreme Court upheld the probation revocation proceeding generally,[1] noting that a probationer has a "positive duty" to remain in contact with probation authorities as to his whereabouts. *Id.* at 412, 586 P.2d at 973.

A central issue in *Bly* involved the question whether the state made a good faith effort to locate Bly prior to proceeding *in absentia.* The record in this case is largely silent as to the full extent of the probation department's efforts to locate Defendant after the petition to revoke was filed. Nonetheless, based on *Bly,* as long as the state had made good faith efforts to locate Defendant, it could have held the revocation proceedings *in absentia* long before Defendant was apprehended by federal authorities. Rule 27.9(a) and (b) merely require that the whereabouts of the probationer be unknown for "at least 60 days," and that the state have "reasonable cause" to believe Defendant had violated "a written condition or regulation of probation" in order to begin revocation proceedings *in absentia.*[2]

Here, the state certainly had reasonable cause to believe Defendant had violated the terms of his probation. Defendant evaded probation authorities for approximately two years and three months prior to his arrest on federal charges. Defendant had a "positive duty" to report to his assigned probation officer. As a consequence of this positive duty, when Defendant failed to report to his

probation officer, "a prima facie case [was] made that he ... violated the terms of his probation." *Bly,* 120 Ariz. at 412, 586 P.2d at 973.

The state's explanation of its failure to prosecute the revocation earlier was its claimed inability to obtain custody of Defendant while he was in federal prison. When the state was notified by federal authorities of Defendant's capture on May 17, 1990, it failed to initiate the probation revocation proceedings. When Defendant filed his motion for a speedy trial or request for final disposition *in absentia* on December 19, 1991, the state still failed to act, claiming that while it had lodged a detainer against Defendant, it could not obtain custody of him for the purposes of a probation revocation proceeding. The state based its argument on the fact that Article III of the IAD prohibits state authorities from obtaining custody of a defendant when the outstanding charge is based on a probation violation, not a "criminal charge." *Carchman v. Nash,* 473 U.S. 716, 717–19, 105 S.Ct. 3401, 3402–03, 87 L.Ed.2d 516 (1985). While the state is correct in its assessment that IAD procedures are unavailable, this fact is not dispositive.

When the IAD is inapplicable, the proper course of action is to secure a writ of *habeas corpus ad prosequendum.* This writ is the primary means by which state authorities may obtain custody of federal prisoners for state proceedings. 28 C.F.R. § 527.30–31 (1983). The record indicates that although the state requested such a writ from the Superior Court, the state never used the writ when the request was granted.[3] The state

---

1. The court also held that a defendant may not be *sentenced in absentia.*

2. The petition to proceed *in absentia* need only contain: (1) the violated terms and regulations of probation; (2) a statement that the probationer's whereabouts are unknown; (3) a description of the state's efforts to locate the probationer; and (4) the probationer's last known address. Ariz. R.Crim. P. 27.9(b).

3. When directly asked why the state did not use the writ it had requested, the prosecutor stated:

Your honor, I think I have already said in my response that if he was in a state prison we could have used an executive agreement and we could have got [sic] him here and we could have dealt

with him. But he was in a federal prison. And in the federal prisons you can try a writ of *habeas corpus ad prosequendum,* and they may sometimes give the individual to you or they may not.

The law is clear in Arizona and there is [sic] some Arizona cases that explain the problem with the writ of *habeas corpus.* It's good in federal courts. When one federal judge tells another federal authority to do something, that federal authority that's told to do something by a federal judge better do it or be subject to reprisals by the federal judge.

But a state judge ... when they issue an order to a federal inmate, that order is not really going to be compelling because the Feds are not subject to state jurisdiction. So it's discretionary

explained at the hearing that it did not use the writ because the federal warden has discretion with regard to authorizing the transfer of an inmate. Section 527.31, however, places limitations on the warden's discretion with respect to transferring federal inmates to state authorities. In addition to the state's failure to use the writ, and even more striking, is the requirement in subsection (c) that the request for transfer be made by a state prosecutor "or other authority who acts on behalf of the court...." It is clear that the state was the party in the best position to attempt to secure custody of Defendant by the use of this writ. The state, however, did not use the writ of *habeas corpus ad prosequendum.* The state's reliance on the mere *possibility* that the writ would not be honored does not excuse its failure to request that the writ be honored.

The state claims it was forced to wait until Defendant's federal term of imprisonment had expired before initiating probation revocation proceedings. We find no authority to support the state's position, and the record indicates that the revocation proceedings *were* held prior to the expiration of Defendant's federal sentence. Arizona has a strong interest in ensuring the speedy resolution of probation revocations. This policy was expressed in a recent supreme court decision, *State v. Flemming,* 184 Ariz. 110, 907 P.2d 496 (1995), in which the court stated: "[n]either [the] rules, nor the Constitution [ ] contemplates that probation revocation proceedings will begin after a lengthy prison term ends."

The state's final claim involves Defendant's telephonic presence. Defendant was ultimately allowed to be present in the revocation proceedings, from federal prison, telephonically. The state claims that it did not use this method earlier in the process because Defendant had not indicated a willingness to waive his presence. As a matter of record, however, Defendant's motion filed December 16, 1994, was entitled "Motion for Speedy Trial or in the Alternative Defendant's Request for Final Disposition In Absentia." Clearly, the leap from full waiver of presence to a waiver of physical presence is

not a long one. The state's claim that it did not consider allowing Defendant to be present telephonically because Defendant did not specifically ask for a telephonic hearing is meritless. The majority attempts to make an argument that Defendant offered to waive his right to be present at sentencing but only if reinstated on probation. (*Ante* p. 573, 931 P.2d p. 1083.) Defendant's offer was legally correct. A probationer whose probation has been revoked *in absentia* cannot be sentenced *in absentia. Bly,* 120 Ariz. at 413, 586 P.2d at 974.

I would hold the delay in this case is unreasonable. The state had a variety of options available to it, not the least of which was a proceeding *in absentia,* that would have enabled revocation proceedings to have taken place years ago. Sentencing would have to await the defendant's actual appearance before the court. *Id.*

**Prejudice to Defendant**

This court has stated that if a defendant is denied a timely probation revocation hearing, the defendant must show that prejudice, resulting from the delay, violated his or her right to due process; a revocation will be reversed only where such prejudice is shown. *State v. Lee,* 27 Ariz.App. 294, 295, 554 P.2d 890, 891 (1976). Furthermore, we have also held that if the facts do not rise to the level of a due process violation, the matter will not be dismissed. *Padilla v. Superior Court,* 133 Ariz. 488, 490, 652 P.2d 561, 563 (App.1982). The defendant in *Lee,* however, complained of a delay of merely a few days. Likewise, in *Padilla,* the probationer was not brought before a judge for an initial appearance on a probation revocation for six days. Here, the delay was several years. Thus, on the basis of the length of the delays, I would find both cases distinguishable.

In *Flemming,* Maricopa County filed a petition to revoke Flemming's probation after he committed a crime in Pinal County while on probation in Maricopa County. In addition, Flemming failed to continue paying his monthly probation fee. As was the case here, after the petition was filed, no action was taken by the state, court, prosecutor, or

with the Feds whether they want to give him to        us or not.

probation authorities. Flemming was eventually convicted and he began serving his prison sentence in Pinal County. Thereafter, as here, Flemming was forced to file a motion to resolve the outstanding probation revocation matter in Maricopa County. The state did not act until after Flemming had submitted his motion, more than twenty-seven months after the filing of the petition to revoke had passed. In this case, Defendant's motion did not result in any action on the petition to revoke his probation until December 1994, almost four years later.

The supreme court clearly stated that a mere delay, such as one caused by logistical problems between courts in different counties, does not prejudice the defendant and does not violate due process. *Flemming*, 184 Ariz. at 115, 907 P.2d at 501 (citing *State v. Gray*, 115 Ariz. 150, 152, 564 P.2d 101, 103 (App.1977)). In this case, however, Defendant was placed on four years' probation to commence from August 5, 1987. Defendant's probation would have expired on August 5, 1991, over three years before it finally was revoked. Moreover, the time period between the date on which the petition to revoke probation was filed and the date on which the first hearing was held amounts to over six years of delay. These circumstances present a case of excessive delay in the extreme. Defendant claims he was prejudiced by this delay because he lost documentary evidence that would have proved his inability to pay the monthly probation service fees, and would have enabled him to defend against the other violations. As the focus in this case is on the length of the delay itself, I consider the delay sufficient in and of itself to establish Defendant's prejudice claims.

I believe that *Flemming* should control for the purpose of the matter at issue here. That the jurisdictions in *Flemming* were counties in Arizona as opposed to the federal and state government does not render the decision inapposite; neither does the fact that in *Flemming* the state failed to provide any explanation for the delay. As we have seen here, the state's claims with regard to obtaining custody of Defendant are insubstantial. The supreme court stated in *Flem-*

*ming* that a remand disposition of the case would be inappropriate:

> If we were to remand now and permit the revocation proceeding to begin anew, defendant would be faced with an even more untimely allegation of probation violation. What he sought to avoid all along, with good reason, would be played out in a Kafkaesque scene. Defendant's probation expired more than three years ago.

*Flemming*, 184 Ariz. at 116, 907 P.2d at 502.

Thus, I would reverse the decision of the court below and hold that the egregious delay in this case is *per se* prejudicial and violative of due process. By holding otherwise, the majority is, in effect, nullifying the rules designed to prevent these very delays in probation revocation proceedings. As the supreme court stated in *Flemming:*

> Even if we were to hypothesize a lack of prejudice to the defendant, the court has an obligation to give some meaning to its rules which are, after all, designed to provide for the type of due process mandated by the Constitution.

> \*    \*    \*    \*    \*    \*

> The delay on the part of the state has been significant. This delay is not only unexplained, it is inexplicable. To remand this case and begin anew would render the time limits of Rule 27.7 meaningless. Under these circumstances of extreme, unexplained delay, the petition to revoke should have been dismissed.

*Id.* at 116–17, 907 P.2d at 502–03 (citations omitted).

In the present case, the state has offered reasons for the lengthy delay. I believe these reasons are wholly insufficient given the facts of the situation. In his motion to dismiss filed in 1991, Defendant offered the alternative of having his revocation proceed *in absentia;* yet not until three years later, was Defendant's motion to dismiss heard.

Clearly, Defendant suffered prejudice by virtue of the extended delay between the state's request for revocation of Defendant's probation and the actual hearing. Moreover, the grounds for the revocation itself were technical rather than substantive, and Defendant's probation expired of its own terms in

1991. While it is true that the court could have made any sentence as a result of the revocation run consecutively to his federal sentence, the excessive delay removed any opportunity for a concurrent sentence. The possibility of prosecutorial vindictiveness exists in these circumstances, and even if only a possibility, should be discouraged by the courts. I also note that Defendant served a substantial portion of his federal sentence in Arizona, which would surely have eased any difficulties the state might have had if they had attempted to resolve this issue in a timely manner.

While the state's dilatoriness in this case might not have been inexplicable, I would find it to be inexcusable.