942 P.2d 439

**STATE of Arizona, Appellee.**

v.

**Seymour Harold ADLER, Appellant.**

**No. CR–96–0520–PR.**

Supreme Court of Arizona.

July 15, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Dawn M. Northup, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy County Public Defender, Phoenix, for Appellant.

## OPINION

MOELLER, Justice.

### FACTS AND PROCEDURAL HISTORY

In 1987, Seymour Harold Adler ("defendant") pled guilty in Maricopa County Superior Court to seven counts of sale of unregistered securities, all class four felonies. The court placed defendant on probation for four years and probation authorities permitted defendant to move to California, expecting that he would be supervised by California authorities under the Interstate Compact Agreement. California authorities rejected supervision of defendant on October 29, 1987, but Arizona probation officials were unaware

of the rejection until June 16, 1988.[1] On July 15, 1988, defendant's probation officer filed a petition to revoke defendant's probation and the trial court issued a warrant for defendant's arrest. The petition alleged that defendant had violated his probation by failing to do the following: report to his probation officer from March through July, 1988; cooperate in the Interstate Compact program; notify the probation officer of changes in his employment status; obtain approval from his probation officer before changing his place of residence; and pay his probation fee of $30 per month.

The state made no effort to proceed with the probation revocation hearing *in absentia.* In 1990, almost two years after the petition to revoke probation was filed, Arizona probation officials were notified that defendant was arrested in Seattle on federal charges arising out of conduct that occurred before defendant was convicted in Arizona. Defendant pled guilty to the new charges and received a federal prison sentence. On December 16, 1991, from the federal prison, defendant filed a motion for speedy trial in his probation violation case or, in the alternative, for final disposition *in absentia.*[2] The state responded by letter to the defendant that it could not obtain custody of defendant until after he had completed his federal sentence; therefore, defendant would have to wait until his federal sentence was completed before obtaining a hearing on the probation violation charges. After this exchange, defendant made additional efforts to obtain a hearing while he was in federal custody. The state, again by letter to the defendant, told him it would not initiate any proceeding to obtain custody of him because it had no legal obligation to do so. Notwithstanding, the state did obtain a writ of *habeas corpus ad prosequendum* to seek custody of defendant, but made no attempt to serve it.

On October 12, 1994, more than six years after the petition to revoke had been filed,

1. The probation officials found out about the rejection when they contacted the Santa Monica, California probation office on June 16. The California office indicated that it sent a rejection notice to its Interstate Compact Office in October 1987. However, the Arizona probation officials never received that information.

2. The trial judge never took any action on this motion, which was filed with the clerk but probably not with the trial judge.

defendant moved to dismiss the petition, arguing that the lengthy delay by the state violated his constitutional right to due process of law. This motion was denied. The trial court held defendant's probation revocation hearing on January 6, 1995, at which time defendant appeared telephonically from the federal prison in Arizona and defendant's counsel was present in chambers. After the hearing, the trial court found that defendant violated his probation and set a date for the disposition hearing. Defendant, through counsel, requested that his sentence run concurrently with his federal sentence or that his sentence be ordered to begin as of the date defendant filed his motion for a speedy hearing. On January 27, 1995, with defendant again appearing telephonically, the trial court revoked defendant's probation and sentenced him to four years imprisonment on each count, to run concurrently with each other but consecutive to the federal sentence. Defendant appealed. The court of appeals affirmed the judgment of the trial court, finding "no constitutional basis for dismissing the petition to revoke." *State v. Adler*, 187 Ariz. 572, 575, 931 P.2d 1082, 1085 (App. 1996). Judge Grant dissented, finding that the delay was unreasonable and violated defendant's due process rights. *Id.* (Grant, J., dissenting). Defendant petitioned this court for review. We have jurisdiction pursuant to Arizona Constitution article VI, section 5(3), and Arizona Rule of Criminal Procedure 31.19. Finding ourselves in agreement with Judge Grant's dissent, we vacate the opinion of the court of appeals and remand the case to the trial court for dismissal.

## QUESTION PRESENTED

Whether defendant's due process rights were violated by the delay in his probation revocation proceedings.

## DISCUSSION

### I. Introduction

■ A person whose probation is subject to revocation is protected by the Due Process Clauses of the Fifth and Fourteenth Amendments and is entitled to a revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93

S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973). The hearing must be held within a reasonable time. *See id.; Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972). Federal courts have held that revocation of probation after unreasonable delay is an abuse of discretion. *See, e.g., United States v. Hamilton*, 708 F.2d 1412, 1415 (9th Cir.1983) (three-year delay unreasonable). The purpose of providing a timely hearing is to hold the proceeding "while information is fresh and sources are available." *Morrissey*, 408 U.S. at 485, 92 S.Ct. at 2602. We turn, then, to a discussion of the factors and authorities that lead us to conclude that defendant's rights were violated.

### A. Reason for the delay

■ The state argues that it was neither required nor authorized to obtain custody of the defendant for the purpose of holding a probation revocation hearing. In a letter from the county attorney to defendant's attorney, the county attorney stated, "Maricopa County would not initiate the extradition of Mr. Adler on his probation revocation warrant because there is no legal requirement that we do so. This decision is also based on the cost factor." Letter from Richard Mesh, Maricopa County Attorney, to Louis Katz, defendant's attorney, June 20, 1994.

■ Although the Interstate Agreement on Detainers did not authorize the state to obtain defendant for a probation revocation hearing, the state could have sought defendant's presence through a writ of *habeas corpus ad prosequendum*. *See* 28 C.F.R. §§ 527.30–.31. "It is generally true that the state may use a writ of habeas corpus *ad prosequendum* to return the accused to the county where charges have been filed." *State v. Loera*, 165 Ariz. 543, 545, 799 P.2d 884, 886 (App.1990). The state, in fact, procured such a writ from the state court but never served it or requested it to be honored. The only reason the state gave for failing to make such a request was that the federal warden has discretion as to whether the writ will be honored. We fail to see how the fact that the warden *might* have refused to comply with the request excuses the state's fail-

ure to make the request, particularly in light of defendant's request for a timely hearing.

### B. Proceeding *in absentia*

■ At any time after the filing of the petition to revoke until the state learned that the defendant was in federal custody, the state could have proceeded *in absentia*. *See* Ariz. R.Crim. P. 27.9(b);[3] *State v. Bly*, 120 Ariz. 410, 412, 586 P.2d 971, 973 (1978). If good faith efforts had been made to locate and notify defendant in 1988, the probation officer could have petitioned the court to revoke defendant's probation *in absentia* sixty days after his whereabouts became unknown. *See* Ariz. R.Crim. P. 27.9. The sentencing, however, would have waited until defendant was present. *See Bly*, 120 Ariz. at 413, 586 P.2d at 974; *see also State v. Fettis*, 136 Ariz. 58, 59, 664 P.2d 208, 209 (1983) (holding that a defendant could not be sentenced *in absentia*, absent exceptional circumstances); Ariz. R.Crim. P. 26.9. Had the state proceeded *in absentia*, defendant could have been sentenced when he went into federal custody in 1990, either by securing his presence in state court by use of a writ or in the manner in which he was finally sentenced in 1995.

After defendant was in federal custody, he requested a prompt hearing and offered to waive his right to be present in his "Motion for Speedy Trial or the Alternate [sic] Defendant's Request for Final Disposition in Absentia" of December 16, 1991. The state did nothing and the hearing did not take place until January 6, 1995, more than three years after defendant made his request.

When the hearing and sentencing were finally held, the defendant appeared telephonically rather than in person. This could have been accomplished three years earlier when defendant initially requested a speedy disposition. Although defendant, in his 1991

motion, did not specifically offer to appear telephonically, he offered to waive his presence entirely. As Judge Grant noted in her dissent, "Clearly, the leap from full waiver of presence to a waiver of physical presence is not a long one. The state's claim that it did not consider allowing Defendant to be present telephonically because Defendant did not specifically ask for a telephonic hearing is meritless." *State v. Adler*, 187 Ariz. 572, 577, 931 P.2d 1082, 1087 (App.1996) (Grant, J., dissenting). The state is familiar with telephonic proceedings. It participates in such hearings with defendants involved in the Probation Reconciliation Program. The state could have had defendant appear telephonically when defendant made his initial request for a hearing.

### C. *State v. Flemming*

The court of appeals sought to distinguish *State v. Flemming*, 184 Ariz. 110, 907 P.2d 496 (1995), from the present case. In *Flemming*, the defendant was arrested on new charges in Pinal County while on probation in Maricopa County. 184 Ariz. at 112, 907 P.2d at 498. He pled guilty to the Pinal County charges and started serving his prison time. While in prison, he tried to get his probation violation resolved with Maricopa County in a speedy manner. *Id.* The defendant was not brought before the judge on the probation violation charges until twenty-seven months after the probation officer filed the petition to revoke. *Id.*

We find many similarities between *Flemming* and the present case. Both defendants requested a speedy disposition of the probation violation charges. *Id.* Both defendants were in prison at the time they made the request. *Id.* Both defendants had the possibility of receiving a concurrent sentence.[4] *Id.* at 116, 907 P.2d at 502. A lengthy period of time passed between the filing of the

---

3. The petition to proceed *in absentia* need contain only the following information: (1) all violations of the terms and regulations of probation; (2) an allegation that the location of the probationer is unknown; (3) the efforts made to locate the probationer; and (4) the probationer's last known address. Ariz. R.Crim. P. 27.9(b).

4. In the present case, defendant's probation officer ultimately made no recommendation on whether the sentences should run consecutively or concurrently. However, the state informed defendant at least once that it was going to ask for defendant's sentences to run concurrently with his federal sentences. Letter from Richard Mesh, Maricopa County Attorney, to Louis Katz, defendant's attorney, June 20, 1994.

petition to revoke and the hearing. *Id.* at 112, 907 P.2d at 498. In both cases, the state did not have a legitimate explanation for the unreasonable delay.[5] Although Flemming was in state custody whereas defendant was in federal custody, the state could have taken reasonable, good faith efforts to obtain defendant's presence through a writ of *habeas corpus ad prosequendum* or to hold a hearing by telephone or pursuant to defendant's waiver of presence, all of which it chose not to do. We stated in *Flemming*, "Neither [the] rules, nor the Constitution, contemplates that probation revocation proceedings will begin after a lengthy prison term ends." *Flemming*, 184 Ariz. at 116–17, 907 P.2d at 502–03. Therefore, in this case, as in *Flemming*, the delay in proceedings was unreasonable. Accordingly, we turn to the issue of prejudice, which the court of appeals concluded had not been established.

### D. Prejudice to Defendant

■ If a person is denied a timely hearing, as defendant was, prejudice resulting from the delay must still be shown to set aside the probation revocation. *State v. Belcher*, 111 Ariz. 580, 581, 535 P.2d 1297, 1298 (1975); *State v. Lee*, 27 Ariz.App. 294, 295, 554 P.2d 890, 891 (1976).

■ Defendant contends that he could not properly defend the charges brought against him because the delay in the proceedings resulted in the loss of phone records, personal records such as calendars, notes, and toll call records, and evidence supporting his claim of inability to pay due to poverty. Since he has been in federal prison, all of defendant's personal, financial, and phone records have been destroyed so he can no longer provide evidence to show that he did not violate probation. We acknowledge and take into account the difficulty of showing a concrete example of prejudice when the delay itself has allegedly led to the loss of the evidence that would show prejudice. But on

one score, prejudice has clearly been shown: the loss of an opportunity to have the prison sentence imposed for probation violation run concurrently with the federal prison sentence. After defendant obtained counsel and was trying to get a hearing, the state, on at least one occasion, told defendant that it would recommend that defendant's incarceration time for his probation violation run concurrent with his federal prison time. The county attorney stated in a letter to defendant's attorney:

> [O]n the court's finding of a violation of probation, the State would recommend that Mr. Adler should receive the maximum term of five (5) years imprisonment on each of the seven (7) counts to be served **concurrently with each other and his federal sentence.** The Arizona and federal sentences are not likely to be coterminous, and therefore the remainder would be served in Arizona.

Letter from Richard Mesh, Maricopa County Attorney, to Louis Katz, defendant's attorney, June 20, 1994.

By the time the revocation hearing was finally held, defendant had effectively been denied any opportunity for a concurrent sentence. Had defendant been sentenced when he should have been, he may well have been able to serve most or all of his state time while he was serving his federal time.

■ The state nevertheless argues that defendant was not prejudiced by the delay because he could not have been sentenced *in absentia;* sentencing would have waited until defendant was released from federal custody and was before the state court. Therefore, according to the state, defendant would not have had the opportunity to receive concurrent sentences. This fails to take into account that the state could have requested his presence through a writ.[6] It also overlooks the fact that defendant was sentenced via telephonic presence when he was finally sen-

---

5. In this case, the possibility that the federal government might not have honored the writ of *habeas corpus ad prosequendum* is not a legitimate explanation for the failure of the state to request that it be honored. Rather, the state's inaction appears to relate to the fact that it did not feel that it was legally required to take any

action. *See* Letter from Richard Mesh, Maricopa County Attorney, to Louis Katz, defendant's attorney, June 20, 1994.

6. We have already noted that the state did secure such a writ but failed to process it.

tenced. If that was appropriate in 1995, it was also appropriate in 1991. Although sentencing *in absentia* is undesirable, *State v. Fettis,* 136 Ariz. 58, 59, 664 P.2d 208, 209 (1983), sentencing with counsel present and the defendant present by telephone with consent is entirely different. Sentencing *in absentia* is not permitted because the time for appeal begins to run from the entry of judgment and sentence whether or not the defendant is present and the defendant needs to be advised of appeal rights. Ariz. R.Crim. P. 26.9 cmt. Additionally, an absent defendant loses the opportunity to exercise his right of allocution and the judge is not able to personally question and observe the defendant. *Fettis,* 136 Ariz. at 59, 664 P.2d at 209. The telephonic presence alleviates most of these concerns, particularly where, as here, it is with defendant's consent. We are not persuaded by the state's present argument that defendant has shown no prejudice because he never should have been sentenced in the manner in which he was sentenced, and in which he could have been sentenced years earlier.

## CONCLUSION

There was unreasonable delay in prosecuting this probation violation proceeding and defendant was prejudiced by the delay. The opinion of the court of appeals is vacated, as is the finding of probation violation and the sentence imposed as a result of that finding. This case is remanded to the trial court to dismiss the petition for revocation of probation with prejudice.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN, J., concur.

MARTONE, Justice, dissenting.

While I agree with the court that the state did not get the petition to revoke resolved in a timely manner, the court bases its finding of prejudice on a claim that was not made in the trial court, or in the court of appeals, and that, in any event, is without substance.

The court says that "on one score, prejudice has clearly been shown: the loss of an opportunity to have the prison sentence imposed for probation violation run concurrent-

ly with the federal prison sentence." *Ante,* at 443. But this idea is both procedurally and substantively without merit.

It is *procedurally without merit* because this is not the defendant's argument. He did not raise this claim in the trial court. Nor did he raise it on appeal. The idea first emerged in the dissenting opinion in the court of appeals. Relying on the dissent, the defendant states the idea in a single sentence in the petition for review. The defendant actually argues presumed prejudice, a concept which we reject.

I suspect that the defendant never argued that he would be prejudiced by the lost opportunity of a concurrent sentence because there is no substance to the claim. The majority relies upon the letter from Mesh to Katz dated June 20, 1994. But the letter was written in 1994 in the face of a July 31, 1995 federal release date. As the letter points out, even if a concurrent sentence had been imposed, the federal and state sentences would not have been coterminous. There would have been very little overlap (certainly less than one year) even if a state sentence had been imposed concurrently at that point. In other words, by June of 1994, it did not matter much whether it was concurrent or consecutive. The 1994 letter does not support the conclusion that "[h]ad defendant been sentenced when he should have been, he may well have been able to serve most or all of his state time while he was serving his federal time." *Ante,* at 443–444. There is no evidence in this case to support that proposition.

Indeed, the contrary is true. In January of 1995, while there was still an opportunity for some relief by way of concurrent sentence, Adler was sentenced to four years in prison *consecutive* to the federal sentence. We thus know for a fact that there was no lost opportunity. The court of appeals was correct when it noted that there was "no reasonable prospect of receiving concurrent sentences from an Arizona court that was aware of his probation violations and his federal convictions." *State v. Adler,* 187 Ariz. 572, 575, 931 P.2d 1082, 1085 (App. 1996).

Because the record fails to support a non-speculative finding of prejudice, I respectfully dissent.