799 P.2d 884

**STATE of Arizona, Appellant,**

v.

**Reginald LOERA, Appellee.**

**No. 1 CA–CR 89–407.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 14, 1990.

Reconsideration Denied Sept. 24, 1990.

William J. Eckstrom, Jr., Mohave County Atty. by Craig R. Friesner, Deputy County Atty., Kingman, for appellant.

Kenneth D. Everett, Mohave County Public Defender, Kingman, for appellee.

## OPINION

EHRLICH, Judge.

The state appealed from the trial court's order dismissing charges against Reginald Loera because he was in federal custody and could not be given a speedy trial in accordance with Rule 8, *A.R.Crim.P.* We reverse and remand.

The essential facts are not in dispute. Loera was involved in an automobile accident on the border of the Fort Mohave Indian Reservation. Where the accident occurred, the center line of the highway marked the border between the reservation and Mohave County. Loera allegedly crossed the center, from the non-reservation side to the reservation side, where he struck another vehicle, killing the driver and injuring her son.

On August 28, 1988, state authorities arrested Loera for driving under the influence of intoxicating liquor (DUI), a misdemeanor. He then was released. Subsequently, the state learned that Loera had prior DUI offenses and filed a felony complaint against him. Loera made an initial appearance on the complaint and was released on September 23, 1988. Six days later, he was indicted by the Mohave County grand jury. When Loera failed to appear for arraignment on October 7, 14, and 28, 1988, the Mohave County Superior Court issued a bench warrant for him.

Meanwhile, Indian authorities had arrested Loera and taken him to Phoenix to face federal attempted murder and manslaughter charges arising out of the same incident. While in federal custody, Loera was detained in a Maricopa County jail. He made his initial appearance in federal court on September 30, 1988. On October 5, 1988, Loera had his federal preliminary and detention hearings. Federal defense counsel requested that Loera be transported to Mohave County, but the United States Magistrate decided that by the terms of Loera's detention order, Loera could not travel, even for the purpose of appearing in state court.

Loera's counsel continued to try to have Loera returned to Mohave County without success. The United States Magistrate remained concerned that if Loera were taken to Mohave County, federal authorities would not be able to regain custody of him until the county proceedings were finished. For that reason, the magistrate refused to allow Loera to return to Mohave County.

While the efforts to transport Loera primarily were made by the defense, the state

did obtain a bench warrant for Loera, which served as the basis for a detainer filed by the state with the federal authorities. The state declined to do more to obtain custody until after the federal proceedings had concluded, believing that it would be futile.

On March 15, 1989, Loera filed a motion to dismiss, contending that his state right to a speedy trial had been violated, relying upon Rule 8, *A.R.Crim.P.*, and *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986). The state responded that all of the time dating from Loera's arrest by federal authorities was excludable from Rule 8 requirements. The trial court dismissed with prejudice the charges against Loera on April 6, 1989.

On appeal, the state argues that the Rule 8 time limits could not be held to have expired because it could not bring Loera from federal custody to face the state charges. Loera contends that the state was required to take steps to return him to Mohave County for arraignment. Because the state failed to do so, and indicated that it would do no more than to file the detainer, Loera claims that the trial court properly dismissed the charges against him. He adds that the state could have issued a writ of habeas corpus *ad prosequendum* to bring him back to Mohave County.

■ It is generally true that the state may use a writ of habeas corpus *ad prosequendum* to return the accused to the county where charges have been filed. *State v. Sheriff of Pima County*, 97 Ariz. 42, 43, 396 P.2d 613, 614 (1964); *cf. United States v. Mauro*, 436 U.S. 340, 355–56, 98 S.Ct. 1834, 1845, 56 L.Ed.2d 329 (1978). A defendant has a Sixth Amendment right to a speedy trial on charges pending in one state while he is incarcerated in another; that writ is a proper method of bringing a defendant to trial. *Smith v. Hooey*, 393 U.S. 374, 376–81, 89 S.Ct. 575, 577–79, 21 L.Ed.2d 607 (1969).

The use of the writ, though, must be considered in conjunction with the Interstate Agreement on Detainers (IAD), A.R.S. §§ 31–481 and 31–482. The IAD was enacted to ameliorate the adverse effects for prisoners and prisons of the procedure of lodging detainers, including the difficulty in securing speedy trials and interference with rehabilitation programs. *Mauro*, 436 U.S. at 350–51, 356, 359–60, 98 S.Ct. at 1842, 1845, 1846–47; *State v. Olson*, 146 Ariz. 336, 338, 705 P.2d 1387, 1389 (App.1985); *see* A.R.S. § 31–481, Art. I. Both Arizona and the United States are signatories to the agreement. A.R.S. § 31–481; *Olson, id.; see Mauro, id.* 436 U.S. at 350, 98 S.Ct. at 1842. As the word "state" is defined in the IAD, it refers both to a "state of the United States" and to "the United States of America." A.R.S. § 31–481, Art. II(a). Thus, it is of no importance in resolving this case that Loera physically was in Arizona because he was in the custody of another "state" for the purposes of the IAD.

■ Rule 8.3, *A.R.Crim.P.*, is intended to supplement the provisions of the IAD. *Olson*, 146 Ariz. at 338, 705 P.2d at 1389. It is the Arizona speedy trial provision applicable to persons in prison "without the state." Because the federal government is a separate "state," Loera was "without the state" for purposes of speedy trial computation. *See* Comment to Rule 8.3(a), *A.R. Crim.P.*; A.R.S. § 31–481, Art. II(a). Rule 8.3(a) requires the prosecutor to take action for a speedy trial within ninety days after the receipt of a written request from a defendant, or within a reasonable time after otherwise learning of a defendant's incarceration without the state. Within ninety days after a defendant is delivered into the temporary custody of the appropriate authority of this state, he must be brought to trial.

■ However, case law, from Arizona and elsewhere, clearly holds that the IAD is not applicable to pretrial detainees in another "state." *See e.g., Escalanti v. Superior Court*, 165 Ariz. 385, 387, 799 P.2d 5, 7 (Ct.App.1990); *Olson*, 146 Ariz. at 338, 705 P.2d at 1389; *Seymour v. State*, 21 Ariz.App. 12, 13, 515 P.2d 39, 40 (1973); *United States v. Dobson*, 585 F.2d 55 (3d Cir.), *cert. denied*, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978), and cases cited; *United States v. Harris*, 566 F.2d 610, 613

(8th Cir.1977); *United States v. Roberts,* 548 F.2d 665, 670–71 (6th Cir.), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977). *See generally,* Annot. 98 A.L.R.3d 160 (1980), § 5(d). Since Loera was a federal pretrial detainee, Rule 8.3(a) time limits do not run until he begins to serve any sentence imposed upon a conviction in the custody state. *Olson,* 146 Ariz. at 339, 705 P.2d at 1390.

Because there was no violation of Rule 8.3, we look to the "general" speedy trial requirement, Rule 8.4(a), which excludes delays caused by the defendant's absence or his inability to be arrested or taken into custody in Arizona. When the defendant is held in custody without the state, as was Loera, he is absent from the state and cannot be arrested. *State v. Quinonez,* 119 Ariz. 208, 210, 580 P.2d 346, 348 (1978); *State v. Knapp,* 123 Ariz. 402, 405, 599 P.2d 855, 858 (App.1979). Accordingly, the time Loera spent in federal custody prior to conviction is excludable time for purposes of Rule 8.4(a).

The state could have done more than file a detainer, which by itself only provides notice that a prisoner is wanted for trial in another jurisdiction; further action is required by the issuing state to obtain the immediate custody of the prisoner. A.R.S. § 31–481; *Mauro,* 436 U.S. at 359–60, 98 S.Ct. at 1846–47; *Olson,* 146 Ariz. at 338, 705 P.2d at 1389. It could have filed, as Loera argues, a writ of habeas corpus *ad prosequendum,* the equivalent of a request for temporary custody. *Mauro, id.* 436 U.S. at 362, 98 S.Ct. at 1848. If temporary custody were granted, the state then would have to bring Loera to trial in the specified period of time or the charges would be dismissed. *Id.* at 350–51, 364, 98 S.Ct. at 1842, 1849.

Nonetheless, we conclude that by filing the detainer, the state proceeded in the proper manner and did all that it was required to do to comply with Rule 8. It would be lacking in comity and unreasonable, as well as contrary to our reading of the law, to force Arizona to request a writ of habeas corpus *ad prosequendum* that, if successful, would disrupt federal proceedings. Indeed, the probability of disruption of the federal proceedings was the reason given by the United States Magistrate when Loera's request to return to Mohave County was denied, a rationale also supporting the state's argument that requesting such a writ would be futile.

For the above reasons, the trial court's order dismissing the charges is reversed; the charges are reinstated, and the matter is remanded for further proceedings. We note further that all time consumed by this appeal is also excluded time under Rule 8. *See State v. Sanchez,* 155 Ariz. 544, 547, 747 P.2d 1243, 1246 (App. 1987).

FIDEL, P.J., and CONTRERAS, J., concur.