876 P.2d 1144

**STATE of Arizona, Appellant,**

v.

**Christopher R. BURKETT, Appellee.**

**No. 1 CA–CR 92–0317.**

Court of Appeals of Arizona,
Division 1,
Department C.

Sept. 16, 1993.

Review and Cross–Petition for
Review Denied.*

* Martone, J., of the Supreme Court, voted to grant review of Appellant's Cross Petition.

110

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Phoenix, for appellant.

Richard M. Romley, Maricopa County Atty. by Vincent H. Tolino, Deputy County Atty., Phoenix, for appellant.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellee.

## OPINION

NOYES, Judge.

We hold that the Interstate Agreement on Detainers (IAD), found in Ariz.Rev.Stat.Ann. (A.R.S.) section 31–481 (1986), does not apply to a sentencing detainer and neither does Rule 8.3(a) of the Arizona Rules of Criminal Procedure (Rule). We reverse the trial court, which had granted Defendant's motion to dismiss the indictment on grounds that the State's delay in having Defendant returned to Arizona for sentencing violated both the IAD and Rule 8.3(a). Because Defendant's motion to dismiss raised a constitutional speedy trial issue that the trial court's ruling did not address, we remand for consideration of that issue.

## I.

On May 4, 1987, Christopher R. Burkett (Defendant) pled guilty to two counts of third-degree burglary, class four felonies. He became a fugitive prior to sentencing, and his whereabouts remained unknown to Arizona authorities until March 1989, when they learned that Defendant was in custody on

other charges in New York City. The sheriff of Maricopa County wrote the New York City Police Department and asked that Defendant be held until he could be brought back to Arizona.

Some months later, in August 1989, Defendant wrote to the Clerk of the Superior Court in Maricopa County. In the letter, Defendant noted that he was serving a two to four year prison sentence in New York, and he inquired: "I'm presently interested in knowing if I can be sentenced there in Maricopa County and have the charges to run currently with my New York State sentence." The next event reflected in the record is that in May 1990, a Maricopa County deputy county attorney wrote Defendant, apparently in response to another letter from Defendant, and advised that the IAD did not apply to Defendant's "situation." The letter also advised that: "We cannot accommodate your request to be sentenced in absentia to have a sentence run concurrent."

In July 1991, Defendant completed his New York sentence. The following month, he was extradited to Arizona. On return to Arizona, Defendant filed a motion to dismiss the indictment, alleging that the State's failure to act on his request for prompt sentencing violated the IAD, Rule 8.3(a), and constitutional provisions mandating a speedy trial. *See* U.S. Const. amend. VI; Ariz. Const. art. II, § 24. The trial court concluded that the State's action violated both the IAD and Rule 8.3(a). The court also determined that, because the State had misadvised Defendant regarding the applicability of the IAD, Defendant's failure to strictly comply with that statute was excused. Therefore, the trial court found that dismissal was required under both the IAD and Rule 8.3(a). The court did not address Defendant's constitutional claims. The State filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. sections 13–4031 (1989) and –4032(1) (Supp.1992).

## II.

■ The application of the IAD and Rule 8.3(a) are issues of law that we review *de novo*. *See, e.g., State v. Angelo,* 166 Ariz. 24,

26, 800 P.2d 11, 13 (App.1990) (meaning of statute reviewed *de novo* on appeal).

### A.

■ The IAD is an intergovernmental compact signed by the United States and forty-eight states, including Arizona and New York. *See* 11 Uniform Laws Annotated 225 (Supp.1993) (listing jurisdictions); *Fex v. Michigan,* — U.S. —, —, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993). Federal law governs interpretation of the IAD. *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); *see also ASARCO, Inc. v. Kadish,* 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696 (1989) (state court has authority "to render binding judicial decisions that rest on their own interpretations of federal laws").

■ A "detainer" is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex,* — U.S. at —, 113 S.Ct. at 1087.

In pertinent part, Article III of the IAD provides:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state *any untried indictment information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days* after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.

A.R.S. § 31–481 (emphasis added).

### B.

■ Nearly all jurisdictions that have considered whether the IAD applies to sentencing detainers have concluded that it does not.

The trial court followed the minority view, the lead case for which is *Tinghitella v. California*, 718 F.2d 308 (9th Cir.1983). We customarily find Ninth Circuit authority persuasive on a federal question. In this case, however, we conclude that a more recent United States Supreme Court opinion and other persuasive authority, discussed below, compel the conclusion that the IAD does not apply to sentencing detainers.

The following cases hold that the IAD does not apply to sentencing detainers: *Moody v. Corsentino*, 843 P.2d 1355, 1367–72 (Colo. 1993); *State v. Barefield*, 110 Wash.2d 728, 756 P.2d 731, 733–34 (1988); *State v. Sparks*, 104 N.M. 62, 64–66, 716 P.2d 253, 255–57 (App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986); *State v. Barnes*, 14 Ohio App.3d 351, 471 N.E.2d 514, 516 (Ohio 1984); *People v. Castoe*, 86 Cal.App.3d 484, 150 Cal.Rptr. 237, 239–40 (1978); *People v. Randolph*, 85 Misc.2d 1022, 381 N.Y.S.2d 192, 194 (1976); *see also Hernandez v. United States*, 527 F.Supp. 83, 85 (W.D.Okla.1981) (by its terms, IAD "applies only to detainers based upon untried indictments, informations or complaints").

Some courts have said, in narrower holdings, that the term "trial" as used in the IAD does not include sentencing. *See United States v. Coffman*, 905 F.2d 330, 332–33 (10th Cir.1990); *People v. Barnes*, 93 Mich.App. 509, 287 N.W.2d 282, 283–84 (1979); *see also State v. Lewis*, 422 N.W.2d 768, 771 (Minn. App.1988) (term "trial" throughout IAD does not include sentencing).

In dismissing the indictment in this case, the trial court relied on *Tinghitella* and on the one case in the country that has explicitly followed it regarding application of the IAD to sentencing detainers, *Hall v. Florida*, 678 F.Supp. 858 (M.D.Fla.1987).[1]

The *Tinghitella* court gave two main reasons for its holding: (1) the term "trial" in the sixth amendment's "speedy trial" clause has been interpreted to include sentencing and (2) the policies behind the IAD of reducing the "uncertainties" accompanying detainers would be furthered by liberally construing "trial" in Article III of the IAD. *See* 718 F.2d at 311. The *Hall* court employed similar reasoning. *See* 678 F.Supp. at 862. We do not find these reasons persuasive in light of the United States Supreme Court opinion in *Carchman*.

The Court in *Carchman* concluded from the plain language and legislative history of the IAD that it applied to "criminal charges"; it did not apply to a probation violation detainer based on a new conviction. *See* 473 U.S. at 734, 105 S.Ct. at 3410. The Supreme Court stated: "Article III by its terms applies to detainers based on 'any untried indictment, information or complaint.' The most natural interpretation of the words 'indictment,' 'information,' and 'complaint' is that they refer to documents charging an individual with having committed a criminal offense." *Id.* at 724, 105 S.Ct. at 3405. The Court also found significant Article III's reference to "untried" criminal charges, and its requirement that a prisoner "shall be brought to trial within 180 days." *Id.* at 724, 105 S.Ct. at 3405. Obviously, if the accused has been convicted, the underlying charges are not "untried."

The concerns addressed by the IAD are not applicable to post-conviction detainers. The Court in *Carchman* noted:

Adoption of the [IAD] was motivated in part by a practice of filing detainers based on untried criminal charges that had little basis. These detainers often would be withdrawn shortly before the prisoner was released. Even though unsubstantiated,

---

1. Two intermediate appellate state courts in the Ninth Circuit did follow *Tinghitella*, but briefly. *People v. Fischer*, 188 Cal.App.3d 1079, 234 Cal. Rptr. 16, 19–20 (1987) cited *Tinghitella* in holding that the IAD applied to sentencing detainers. The California Supreme Court, however, ordered that this opinion be de-published. *State v. Barefield*, 47 Wash.App. 444, 735 P.2d 1339, 1343–44 (1987), followed *Tinghitella* in holding that the IAD applied to sentencing detainers. However, the Washington Supreme Court, in *State v. Bare-* *field*, 110 Wash.2d 728, 756 P.2d 731 (1988), held that the IAD does not apply to sentencing detainers. *But see Cross v. Meisel*, 720 F.Supp. 486, 489 (E.D.Pa.1989) (indicated in dicta that plaintiff, who was the losing party in a § 1983 action, might be entitled to relief for an IAD violation based on *Tinghitella* ); *Walker v. King*, 448 F.Supp. 580, 587 (S.D.N.Y.1978) (preceded *Tinghitella* and stated that use of the terms "trial" and "final disposition" in the IAD includes sentencing).

the detainers would have a detrimental effect on the prisoner's treatment. Article III enables a prisoner to require the State lodging the detainer either to drop the charge and resulting detainer or to bring the prisoner to trial. In this way, the prisoner can clear his record of detainers based on unsubstantiated charges.

*Id.* at 729–30, 105 S.Ct. at 3408–09 (footnotes omitted). The Court found that a probation-violation charge based on convictions for new crimes was "conclusively established," not unsubstantiated; therefore, the abuses that motivated the IAD's adoption were not present. *Id.* at 731, 105 S.Ct. at 3409. We find that the same rationale applies to sentencing detainers; they too are based on "conclusively established" charges, not on "untried" charges.

We agree with the analysis provided by the New Mexico Court of Appeals in explaining its conclusions that the IAD does not apply to sentencing detainers and that *Tinghitella* has been limited by the Supreme Court's later pronouncement in *Carchman:*

> In our case, as in the probation revocation situation, defendant has already been prosecuted. He already has pled guilty to three fourth-degree felonies. He, therefore, has been brought to trial. We conclude that the detainer in this case was not based on any untried indictment, information, or complaint under the IAD. *See Carchman.*
>
> ... [W]e find that the policy considerations which prompted the creation and adoption of the IAD are not present here. Defendant's situation is not a condition which the IAD was designed to remedy.
>
> ....
>
> As in the case of the probation violation detainer in *Carchman,* however, the fear of filing meritless detainers is not present here. A sound basis supported the filing of this detainer. Defendant here had been convicted and he had failed to appear for sentencing. The detainer, therefore, was unquestionably legitimate.
>
> Additionally, the uncertainties which confront a prisoner who has a detainer based on an outstanding indictment, information or complaint are much graver than

those arising from an outstanding sentence. In the case of a prisoner affected by a detainer on an untried charge, invocation of the IAD procedures may result in a not guilty verdict totally displacing the detainer. Whereas, in our case, defendant is certain that he has been convicted of three felony offenses.

*Sparks,* 104 N.M. at 65–66, 716 P.2d at 256–57.

We hold that the IAD does not apply to sentencing detainers. We conclude that the trial court erred in determining that the IAD applied to Defendant's request for sentencing.

### III.

■ The trial court also based its dismissal on a violation of Rule 8.3, which provides:

> a. **Persons Without the State.** Within 90 days after receipt of a written request from any person charged with a crime and incarcerated without the state, or within a reasonable time after otherwise learning of such person's incarceration without the state, the prosecutor shall take action as required by law to obtain such person's presence for trial. Within 90 days after the defendant has been delivered into the temporary custody of the appropriate authority of this state, he shall be brought to trial.

Ariz.R.Crim.P. 8.3(a).

Rule 8.3(a) is intended to supplement the IAD. *See State v. Loera,* 165 Ariz. 543, 545, 799 P.2d 884, 886 (App.1990); *State v. Olson,* 146 Ariz. 336, 338, 705 P.2d 1387, 1389 (App. 1985). "It is the Arizona speedy trial provision applicable to persons in prison 'without the state.'" *Loera,* 165 Ariz. at 545, 799 P.2d at 886. Rule 8.3(a)'s express reference to obtaining a defendant's presence for "trial," compels the conclusion that the rule, like the IAD itself, does not apply to Defendant's request for sentencing.

We hold that Rule 8.3 does not apply to sentencing detainers. We conclude that the trial court erred in determining that Rule 8.3 applied to Defendant's request for sentencing.

## IV.

### A.

Defendant claimed in the trial court that his constitutional right to a speedy trial was denied by the delay following his request for sentencing. *See* U.S. Const. amend. VI; Ariz. Const. art. II, § 24. The trial court did not address this claim, and it appears to be a colorable claim that should be addressed on remand.

■ Although the Supreme Court has never expressly decided whether the right to a speedy trial applies through the sentencing stage of the proceedings, in *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393 (1957), the Court was presented with the issue and assumed *arguendo* that the "sentence is part of the trial for purposes of the Sixth Amendment."

Other courts have assumed or specifically held that the speedy trial guarantee applies through sentencing. *See United States v. Martinez*, 837 F.2d 861, 866 (9th Cir.1988); *Burkett v. Cunningham (Burkett I)*, 826 F.2d 1208, 1220 (3rd Cir.1987); *Perez v. Sullivan*, 793 F.2d 249, 253 (10th Cir.), *cert. denied*, 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986); *Tinghitella*, 718 F.2d at 312–13; *United States v. Merrival*, 600 F.2d 717, 720 (8th Cir.1979); *United States v. Howard*, 577 F.2d 269, 270 (5th Cir.1978); *Brady v. Superintendent*, 443 F.2d 1307, 1310 (4th Cir.1971); *United States v. Tortorello*, 391 F.2d 587, 589 (2d Cir.1968); *Welsh v. United States*, 348 F.2d 885, 887 (6th Cir.1965); *Moody v. Corsentino*, 843 P.2d 1355, 1363–67 (Colo.1993); *State v. Cunningham*, 405 A.2d 706, 709–10 (Del.1979); *Gonzales v. State*, 582 P.2d 630, 632 (Alaska 1978); *Erbe v. State*, 276 Md. 541, 350 A.2d 640, 642 (1976); *State v. Fennell*, 218 Kan. 170, 542 P.2d 686, 694 (1975); *but see State v. Johnson*, 363 So.2d 458, 460 (La.1978) (sixth amendment does not apply to delay between conviction and sentencing).

The Arizona Supreme Court has never clearly applied the sixth amendment to a delay between conviction and sentencing, but there have been suggestions to that effect. In *State v. Steelman*, 126 Ariz. 19, 612 P.2d 475, *cert. denied*, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980), the court considered the lapse of nearly four years between the defendant's first capital sentencing hearing and a second hearing ordered after an appeal. The court noted that the issue of whether "the Sixth Amendment speedy trial guarantee includes the right to prompt sentencing" has not been decided by the United States or the Arizona Supreme Court. *Id.* at 22, 612 P.2d at 478. The court continued: "If such a rule were adopted, however, it would follow that the defendant would have to show some prejudice before being able to obtain any relief." *Id.* The court, though, found no prejudice in the delay. *Id.*

In *State v. Blazak*, 131 Ariz. 598, 643 P.2d 694, *cert. denied*, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982), our supreme court addressed a similar delay between capital sentencing hearings. Citing *Steelman*, the court stated: "Neither this court nor the United States Supreme Court has found that the right to a speedy trial extends to sentencing." *Blazak*, 131 Ariz. at 600, 643 P.2d at 696. Despite this disclaimer, the court, as in *Steelman*, determined that the defendant had not been prejudiced by the delay. *Id.* at 600–01, 643 P.2d at 696–97.

### B.

In light of the foregoing authorities, we hold that the guarantees to speedy trial, found in the sixth amendment of the United States Constitution and article two, section twenty-four of the Arizona Constitution, apply through sentencing. The framework for analyzing the delay between conviction and sentencing is the four-part test articulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *See Burkett v. Fulcomer (Burkett II)*, 951 F.2d 1431, 1438 (3rd Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992); *Martinez*, 837 F.2d at 867; *Burkett I*, 826 F.2d at 1219; *Perez*, 793 F.2d at 253–54; *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir.1985); *see also State v. Schaaf*, 169 Ariz. 323, 327, 819 P.2d 909, 913 (1991) (Arizona Supreme Court applies the standard found in *Barker v. Wingo* to analyze a speedy trial claim).

The *Barker* test requires the court to consider: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192. Of these factors, length of delay is the least important and prejudice is the most important. *See Schaaf,* 169 Ariz. at 327, 819 P.2d at 913; *Olson,* 146 Ariz. at 339, 705 P.2d at 1390.

■ In his August 1989 letter, Defendant made a request for sentencing, although arguably the request was conditioned on his receipt of concurrent sentences, something he was not guaranteed by law or plea agreement. If the length of the delay is calculated from August 1989—and whether it is or not is for the trial court to decide—twenty-three months lapsed between Defendant's request for sentencing and his extradition to Arizona. This delay is long enough to trigger a *Barker* inquiry. *See Doggett v. United States,* — U.S. —, — n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992) ("Depending on the nature of the charges, the lower courts have generally found post[-]accusation delay 'presumptively prejudicial' at least as it approaches one year.").

■ The cause of the delay requires closer scrutiny. The State argues that Defendant's flight before sentencing was the cause of the delay. This argument over-simplifies the causation issue. Although Defendant was the cause of delay while he remained a fugitive, once Arizona authorities knew Defendant was incarcerated in New York and was requesting *in absentia* sentencing in Arizona, any ensuing delay might have been caused by the State, not Defendant. *See Braden v. 30th Judicial Circuit Court of Ky.,* 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973) (after defendant made repeated demands for trial, the state courts had an opportunity to consider the merits of his speedy trial claim); *Moody,* 843 P.2d at 1364 n. 13 (court will use *Barker* analysis even though part of the delay was attributable to defendant's own actions). Any delay caused by the State is cognizable for sixth amendment purposes. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192 ("A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").

The final *Barker* factor, prejudice to Defendant, is impossible to analyze based on the present record. The Defendant in his responsive brief, and the trial court in its order of dismissal, made reference to the fact that Defendant was prejudiced because the Arizona hold caused New York to deny Defendant's request for temporary release. However, it appears that denial of that request was made less than one month after Defendant made his request for sentencing. While denial of release may have been attributable to the detainer itself, it is not clear that it was attributable to the State's delay in acting on that detainer. The trial court also referred to Defendant being "prejudiced during the undue delay regarding the terms and conditions of the New York confinement." The existence of such prejudice during confinement is not supported by the present record, but may be explored on remand.

In the order of dismissal, the trial court mentioned that Defendant had been "deprived of his right under Arizona law and his plea agreement to seek a concurrent sentence." Whether this is a sufficient showing of prejudice under the sixth amendment can be explored on remand.

## V.

We reverse the order dismissing the indictment. We remand the case to the trial court with directions to consider Defendant's claim that his constitutional right to speedy trial was violated.

GARBARINO, P.J., and McGREGOR, J., concur.