In December 1999, the appellant, Marcel Stephenson, an inmate incarcerated at Holman Prison, filed a petition for a writ of habeas corpus, contending that he is being denied the opportunity to earn a reduction in his custody status and to participate *Page 35 
in work release and educational programs because two outstanding sentencing detainers from the State of Florida are pending against him. He requested that the circuit court order the Alabama Department of Corrections to remove the two sentencing detainers from his institutional file because there has not been a final disposition of the detainers as required by the Uniform Mandatory Disposition of Detainers Act ("UMDDA"),[1] which is codified at §§ 15-9-80 through -88, Ala. Code 1975. After the State responded, the circuit court summarily dismissed the petition. This appeal followed.
The appellant alleges that, after he had been convicted of grand theft auto in Bay County, Florida, he was released from the county jail on the condition that he return for sentencing on November 6, 1985. However, he asserts that he was not able to appear for the sentencing hearing because he was arrested in Alabama on November 4, 1985. Subsequently, he was convicted in Montgomery County, Alabama, of first-degree arson and sentenced to serve a term of 21 years in prison.[2] On June 12, 1986, Bay County, Florida, authorities issued a detainer against the appellant because he did not appear at the November 6, 1985, sentencing hearing. On February 12, 1990, Bay County, Florida, authorities issued a second detainer against the appellant based on his failure to appear at the November 6, 1985, sentencing hearing. On February 14, 1991, the appellant gave written notice of his place of imprisonment and requested a final disposition of the sentencing detainers pursuant to the UMDDA. The record indicates that, on March 20, 2000, the 1986 detainer was removed from the appellant's institutional file. However, the 1990 detainer is still pending against the appellant.
 I.
The appellant argues that his due process rights have been violated because the State of Florida did not effect a final disposition of the sentencing detainers within 180 days after he filed his request for final disposition as required by the UMDDA. "[A] writ of habeas corpus is the proper vehicle with which to attack interstate detainers." Speights v.State, 546 So.2d 1009, 1009 (Ala.Crim.App. 1988).
 "The Alabama Legislature enacted the Uniform Mandatory Disposition of Detainers Act in 1978, adopting the Interstate Agreement on Detainers (Agreement). 1978 Ala. Acts 693, No. 590 (April 27, 1978); Ala. Code 1975, § 15-9-81. Congress enacted the Interstate Agreement on Detainers Act in 1970, joining the United States and the District of Columbia as parties to the Agreement. 18 U.S.C.A. App., §§ 1-2, page 585 (1985). The United States is a `state' for purposes of the Agreement. Agreement, Article II(a). At least forty-six states, including Alabama, are signatories. United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); McCallum v. State, 407 So.2d 865
(Ala.Crim.App. 1981). The Agreement attempts to remedy the disadvantages and hardships imposed upon prisoners attendant to the use of detainers and to eliminate potential abuses of the detainer system. Article I. The agreement provides the prisoner with a method of clearing detainers lodged against *Page 36 
him. It further provides cooperative proceedings for temporary transfers of prisoners for purposes of trial on outstanding charges among participating jurisdictions to aid such disposition. United States v. Dixon, 592 F.2d 329 (6th Cir.), cert. denied, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); Morning v. State, 416 So.2d 780 (Ala.Crim.App. 1982). In either case, the provisions of the Agreement are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated. United States v. Mauro, supra; United States v. Dixon, supra."
Gillard v. State, 486 So.2d 1323, 1325 (Ala.Crim.App. 1986). Article I of the UMDDA, which is codified at § 15-9-81, Ala. Code 1975, provides:
 "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly
disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."
(Emphasis added.) Article III of the UMDDA, which is also codified at § 15-9-81, Ala. Code 1975, provides, in pertinent part:
 "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decision of the state parole agency relating to the prisoner.
". . . .
 "(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is *Page 37 
specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."
Alabama has recognized that the UMDDA applies to detainers involvinguntried indictments, informations, or complaints pending against an inmate in another state for which there has not been a final disposition. See Morrow v. State, 675 So.2d 89 (Ala.Crim.App. 1995);Gillard, supra. Although this court has held that the UMDDA does not apply to parole revocation hearings, probation revocation hearings, or intrastate detainers, see Morrow, supra, Downing v. State, 620 So.2d 983
(Ala.Crim.App. 1993), and Kirk v. State, 536 So.2d 118 (Ala.Crim.App. 1987), we have not determined whether the UMDDA is applicable to outstanding sentencing detainers from other states. However, in Boguev. Fennelly, 705 So.2d 575 (Fla.Dist.Ct.App. 1997), the Florida District Court of Appeal for the Fourth District addressed a similar factual situation and issue as follows:
 "Defendant is presently incarcerated in Pennsylvania serving a sentence for criminal charges in that state. This case dates back to March 1, 1981, when defendant was arrested in Florida and charged by information with trafficking in cocaine and using a firearm during the commission of a felony. Defendant pled guilty to both charges on September 23, 1981, but failed to appear for his subsequent sentencing in Martin County.
". . . .
 "On January 14, 1991, defendant was sentenced on the Pennsylvania charges to consecutive sentences totaling five and one-half (5 1/2) to eleven (11) years. At that time, defendant was also awaiting sentencing in a federal case in Arizona. In May 1994, the Arizona federal court sentenced defendant to four years in custody to run concurrently with defendant's Pennsylvania sentence. Only the Florida charges remained unresolved.
 "On September 26, 1994, defendant submitted formal written notice and requested final disposition of his charges by the State of Florida pursuant to section 941.45, article III(a) and (b) of the IAD. The state has never instituted extradition proceedings and refuses to transfer defendant to Florida for sentencing until he has completed his other sentences. The position of the state is that it is under no obligation to begin proceedings to sentence defendant, who voluntarily fled the state, until he completes his Pennsylvania sentence.
 "Defendant asserts that the state's refusal to sentence him has prejudiced defendant by preventing a Florida trial court from exercising its discretion to run his Florida sentence concurrently with the Pennsylvania sentence. He also alleges prejudice by claiming that the unresolved status of the Florida charges has affected his ability to participate in certain rehabilitative programs *Page 38 
in Pennsylvania for which he would otherwise be eligible. The state maintains the defendant's current predicament is solely a product of his own action in fleeing the state in the first place.
"ANALYSIS OF THE IAD
 "Section 941.45, Florida Statutes (1995), adopts and incorporates into this state's jurisprudence the IAD, articles I-IX. The IAD is an intergovernmental compact between the United States and individual cooperating states by which a prisoner in one jurisdiction can seek disposition of detainers filed against him in another jurisdiction. See Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); Moody v. Corsentino, 843 P.2d 1355, 1367 (Colo. 1993); Arizona v. Burkett, 179 Ariz. 109, 876 P.2d 1144, 1146 (Ct.App. 1993), cert. denied, 513 U.S. 1121, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995). A detainer is `a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent.' Burkett, 876 P.2d at 1146 (quoting Fex v. Michigan, 507 U.S. 43, 44, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993)).
 "`The IAD's policy and purpose is set forth in article I:
 "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition . . . of any and all detainers based on untried indictments, informations, or complaints."
"§ 941.45 (emphasis supplied).
 "To effectuate this purpose, article III(a) specifies that
 "`whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered . . . written notice. . . .'
 "Id. (emphasis supplied). If the case has not been `brought to trial' within 180 days, then the court where the indictment, information, or complaint has been pending `shall' dismiss the case with prejudice so that the detainer ceases to have any force or effect. See id., Art. V(c).
". . . .
 "The question here is whether the detainer lodged against a defendant who has fled the state after pleading guilty, but before sentencing, is likewise a detainer based on an `untried indictment, information, or complaint.' This case, therefore, turns on questions of statutory interpretation. The simple answer is that where, as here, a defendant has been convicted of a crime as the result of a guilty plea, there is no pending `untried indictment, information, or complaint,' even though the defendant has not been sentenced. While defendant has not yet been punished by receiving a sentence, he has admitted his guilt by pleading guilty; he has been convicted of the crimes charged.
 "The IAD is a federal law subject to federal construction. Carchman, 473 U.S. at 718, 105 S.Ct. at 3402-03. Because *Page 39 
the United States Supreme Court has interpreted the IAD in Carchman, we are bound to analyze the statute consistently with Carchman. See Burkett, 876 P.2d at 1146.
 "In Carchman, the United States Supreme Court confronted the issue of whether a detainer based on an outstanding parole or probation-violation charge triggers the protections of IAD. It noted that the Third Circuit Court of Appeals had `[d]eclined to adopt a technical interpretation of the relevant language of [a]rt. III, and instead relied on "the broader purposes of the legislation."' Carchman, 473 U.S. at 723, 105 S.Ct. at 3405.
 "The Supreme Court rejected the `policy analysis' approach of the third circuit, instead concentrating on the actual language employed in the operative section, article III. It noted that the adjective `untried' would `seem to refer to matters that can be brought to full trial.' This interpretation is reinforced by the `requirement [of article III] that a prisoner who requests final disposition of the indictment, information, or complaint "shall be brought to trial within 180 days."' Id.
 "Applying principles of statutory construction, the Supreme Court held that the language of the legislative declaration of purpose in article I must be read in the context of articles III and IV, with the specific language of article III controlling over the general language of article I. Id. at 726 n. 4, 105 S.Ct. at 3406 n. 4. By its own terms, article III `does not apply to all detainers, but only to those based on "any untried indictment, information, or complaint."' Id. at 727, 105 S.Ct. at 3407.
 "It is the phrase `untried indictment, information, or complaint' which defines the reach and scope of the IAD. Id.; United States v. Coffman, 905 F.2d 330, 332
(10th Cir. 1990). In contrast to indictments, informations, and complaints, which are all documents that institute charges against individuals, the sentencing process finalizes the disposition of charges which have already been adjudicated. Thus, it follows that detainers based only on unresolved sentencing issues are not included within the scope of the IAD.
". . . .
 "Giving the terms `trial' and `untried indictment' their commonly-understood meanings comports with basic principles of statutory construction. As explained by our supreme court:
 "`[T]he plain meaning of statutory language is the first consideration of statutory construction. Only when a statute is of doubtful meaning should matters extrinsic to the statute be considered in construing the language employed by the legislature.'
 "Capers v. State, 678 So.2d 330, 332 (Fla. 1996) (citations omitted); see also Skinner v. Skinner, 678 So.2d 512, 513 (Fla. 4th DCA 1996) (primary rule of statutory construction is `courts should not depart from plain and unambiguous language of statute').
 "The vast majority of jurisdictions, including all of the state appellate courts considering the issue, have concluded that sentencing detainers do not trigger the safeguards of the IAD. Moody, 843 P.2d at 1369-72; Burkett, 876 P.2d at 1140.[5] These courts have also given the terms `untried indictments' and `trial' their commonly accepted and understood meanings. Once a defendant has pled guilty, the defendant no longer has a right to a `trial'; therefore, there is no pending `untried' indictment. See, e.g., Coffman; Moody; Burkett. By pleading guilty, a defendant *Page 40 
waives the right to a jury trial, and the trial court's acceptance of the plea acts as a conviction. Moody, 843 P.2d at 1370.
". . . .
 "In short, the IAD is a statutory procedural protection and not a constitutional right. While, as the dissent points out, unresolved sentencing issues may affect rehabilitation, this concern cannot cause us to ignore the actual statutory language, which does not apply to all detainers. See Moody, 843 P.2d at 1369.
 "If Congress had intended that the IAD be applied expansively, it could have used a phrase such as `detainers based on unresolved criminal charges.' Instead of utilizing the term `trial' to set parameters, Congress could have utilized the term `final disposition.'
 5. "See, e.g., Utah v. Leyva, 906 P.2d 910 (Utah Ct.App. 1995); New Jersey v. Miller, 277 N.J. Super. 122, 649 A.2d 94, 96 (Ct.App. Div. 1994), cert. denied, 142 N.J. 449, 663 A.2d 1356 (1995); Tennessee v. Hill, 875 S.W.2d 278, 282 (Tenn.Crim.App. 1994); Minnesota v. Lewis, 422 N.W.2d 768, 770 (Minn. Ct. App. 1988); Washington v. Barefield, 110 Wn.2d 728, 756 P.2d 731, 733 (1988), criticized on other grounds, Washington v. Morris, 126 Wn.2d 306, 892 P.2d 734
(1995); New Mexico v. Sparks, 104 N.M. 62, 716 P.2d 253, 255-57 (Ct.App.), cert denied, 103 N.M. 798, 715 P.2d 71
(1986); Ohio v. Barnes, 14 Ohio App.3d 351, 471 N.E.2d 514, 516 (1984); California v. Mahan, 111 Cal.App.3d 28, 168 Cal.Rptr. 428, 430-31 (Dist. Ct. App. 1980); Michigan v. Barnes, 93 Mich. App. 509, 287 N.W.2d 282, 283-84 (1979); New York v. Nosek, 236 A.D.2d 892, 654 N.Y.S.2d 63 (N.Y. 1997); New York v. Randolph, 85 Misc.2d 1022, 381 N.Y.S.2d 192, 194
(App.Div. 1976)."
705 So.2d at 576-81 (some footnotes omitted; emphasis added). See alsoUnited States v. Currier, 836 F.2d 11 (1st Cir. 1987); People v.Peterson, 264 A.D.2d 574, 695 N.Y.S.2d 550 (N.Y.App. Div. 199 9), cert. denied, 531 U.S. 831, 121 S.Ct. 85, 148 L.Ed.2d 46 (2000); Lancaster v.Stubblefield, 985 S.W.2d 854 (Mo.Ct.App. 1998), cert. denied, 528 U.S. 584,120 S.Ct. 134, 145 L.Ed.2d 115 (1999); State v. Grzelak, 215 Wis.2d 577,573 N.W.2d 538 (Wis.Ct.App. 1997), review denied, 217 Wis.2d 521,580 N.W.2d 691 (Wis. 1998) (table).
We agree with the reasoning set forth in Bogue and the other cases cited herein. Therefore, we conclude that the UMDDA does not apply to sentencing detainers. Accordingly, the appellant's argument is without merit.
 II.
The appellant also argues that the circuit court erroneously dismissed his petition without conducting an evidentiary hearing. However, a circuit court may summarily dismiss a petition for a writ of habeas corpus if the pleadings are sufficient to show that there is no merit to the petition. See D. L. S. v. State, 675 So.2d 1363 (Ala.Crim.App. 1995). Because the appellant's petition was not meritorious, as stated in Part I of this opinion, the circuit court properly summarily dismissed it.
For the above-stated reasons, we affirm the circuit court's judgment.
AFFIRMED.
Long, P.J., and McMillan and Fry, JJ., concur; Cobb, J., concurs in the result.
[1] The UMDDA is also known as the Interstate Agreement on Detainers ("IAD").
[2] The appellant's inmate summary sheet shows that, in 1991, he was also convicted of manslaughter in Escambia County, Alabama, and was sentenced to serve a term of 20 years in prison. *Page 41