OPINION
 

 By the Court, Agosti, J. :
 

 This appeal presents the question of whether the Interstate Agreement on Detainers (“Agreement”) applies to a defendant who has pleaded guilty but has not been sentenced. We hold that the Agreement does not apply under this circumstance.
 

 We are also asked to determine whether either a statutory right to be sentenced without unreasonable delay or a constitutional right to a speedy trial was violated in this case. We hold that neither the appellant’s statutory nor constitutional right was violated.
 

 In 1997, the State charged appellant, Charles Edward Prince, with burglary, fraudulent use of a credit card and possession of a credit card without the cardholder’s consent. In early 1998, Prince, after making a plea bargain with the State, pleaded guilty to one count of fraudulent use of a credit card. The district court scheduled the sentencing hearing for April 27, 1998. Prince failed to appear at sentencing, and the district court issued a warrant for his arrest.
 

 Sometime thereafter, the State received notice that Prince was in custody in Tucson, Arizona, under an alias. On August 3, 1998, Prince signed a waiver of extradition. He desired to be-returned to Nevada for his pending sentencing here while he was serving a six-year Arizona prison term.
 

 Nevada decided not to extradite Prince, but requested instead that Arizona detain him for sentencing in Nevada and notify Nevada sixty days prior to Prince’s release from his Arizona prison term so that Nevada could arrange to transport him to Nevada for sentencing. In a letter to Arizona prison officials, a Clark County Extradition Coordinator explained that “[o]ur Governor has a policy that the Detainer Agreement does not apply when a person has pled guilty to or been found guilty of a charge.’ ’
 

 
 *637
 
 After Nevada refused to extradite him until he concluded his prison term in Arizona, Prince filed an affidavit in the Eighth Judicial District Court in Nevada which contained a request to be sentenced in absentia and a waiver of his right to be personally present at his sentencing. The district court denied his request.
 

 Prince next filed a motion to dismiss, contending violations of his constitutional speedy trial and due process rights, his statutory rights under NRS 176.015, which prohibits unreasonable delays in sentencing, and his rights under the Agreement. The district court denied his motion to dismiss, but did find a violation of the Agreement. The district court determined that Nevada’s request that Arizona detain Prince for sentencing in Nevada upon his release from custody in Arizona constituted a detainer within the meaning of the Agreement. On May 31, 2001, the district court sentenced Prince in absentia
 
 [1]
 
 to twelve to thirty months, to be served concurrently with his sentence in Arizona. Prince now appeals his judgment of conviction.
 

 On appeal, the parties agree that Nevada’s request to Arizona met the form of a detainer, and that the only issue is whether the Agreement applies to a defendant awaiting sentencing. The Agreement is an interstate compact approved by Congress. Nevada is a party to the compact.
 
 [2]
 
 The Agreement, among other things, outlines procedures by which a prisoner may request the speedy disposition of charges against him which are pending in a jurisdiction other than where he is incarcerated.
 
 [3]
 
 When four conditions have been satisfied, a receiving state must bring a defendant to trial within 180 days.
 
 [4]
 
 If a state fails to do so, the charges must be dismissed with prejudice.
 
 [5]
 
 The Agreement is embodied in NRS
 
 *638
 
 178.620; however, because it is an interstate compact approved by the United States Congress, it is subject to federal construction.
 
 [6]
 

 Prince cites
 
 Tinghitella v. State of California
 

 [7]
 

 and
 
 Hall
 
 v.
 
 State of
 
 Florida
 
 [8]
 
 for the proposition that the Agreement applies to a defendant awaiting sentencing. In
 
 Tinghitella,
 
 the Ninth Circuit Court of Appeals held that the Agreement applied to sentencing proceedings, concluding that the word “trial” in the Agreement should be broadly construed.
 
 [9]
 

 Tinghitella
 
 was cited with approval in Hall,
 
 [10]
 
 The court in
 
 Hall
 
 concluded that the Agreement applied to sentencing hearings because “the United States Supreme Court has construed the term ‘trial’ to include sentencing for purposes of federal statutory construction and the Sixth Amendment,’ ’ and because the Agreement itself provided for liberal construction to effectuate its purposes.
 
 [11]
 

 Tinghitella
 
 and
 
 Hall
 
 represent a minority view and seem to be the only authority for the proposition that the Agreement’s 180-day dispositional requirement applies when a defendant, who has been adjudged guilty but has not yet been sentenced, makes a demand under the Agreement to be sentenced.
 

 Most jurisdictions hold that the 180-day dispositional requirement does not apply to demands for sentencing hearings.
 
 [12]
 
 In so holding, the majority of jurisdictions rely on
 
 Carchman v.
 
 Nash,
 
 [13]
 
 wherein the United States Supreme Court held that the Agreement does not apply to probation revocation proceedings. The Court considered its plain language, stating:
 

 Article III by its terms applies to detainers based on “any untried indictment, information or complaint.’ ’ The most natural interpretation of the words “indictment,” “information,” and “complaint” is that they refer to documents charging an individual with having committed a criminal offense. This interpretation is reinforced by the adjective
 
 *639
 
 “untried,” which would seem to refer to matters that can be brought to full trial, and by Art. Ill’s requirement that a prisoner who requests final disposition of the indictment, information, or complaint “shall be
 
 brought to trial
 
 within 180 days.”
 
 [14]
 

 The Court also considered the legislative history of the Agreement and said, “The legislative history of the Agreement does not persuade us to depart from what appears to be the plain language of the Agreement.”
 
 [15]
 
 The Court noted that the Agreement’s purpose is to prevent frivolous detainers and prejudice to the defendant’s ability to present a defense at trial caused by delay.
 
 [16]
 
 The Court concluded that the Agreement’s purposes were not furthered by applying it to probation revocation proceedings since the issue of guilt is not re-litigated there.
 
 [17]
 

 Numerous jurisdictions have relied on the
 
 Carchman
 
 analysis to support the proposition that the Agreement does not apply to a demand for an expeditious sentencing hearing.
 
 [18]
 
 Ordinarily, where guilt has already been adjudicated, the need for a speedy case disposition by sentencing the offender, is less compelling. Where a defendant has been convicted or has pleaded guilty, there can be no concern that the detainer is without grounds since the adjudication of guilt is proof of the detainer’s legitimacy.
 
 [19]
 
 Likewise, the uncertainty that confronts a prisoner with an “untried” detainer where guilt is at issue is much more grave than the uncertainty involved when only sentencing remains to be resolved.
 
 [20]
 
 Further, despite Tinghitella’s statement that the Sixth Amendment applies to sentencing, the United States Supreme Court has never held that sentencing is a part of trial.
 
 [21]
 

 Because Prince’s guilt has already been determined, a delay in his sentencing proceedings will not affect his ability to assert a trial defense. In fact, as with parole revocation proceedings, the passage of time may even help the accused by allowing him to utilize his good behavior in prison to argue leniency.
 

 
 *640
 
 Finally, we observe here that Prince willfully failed to appear for sentencing and engaged in other criminal acts, which resulted in his imprisonment in Arizona. He caused the delay of which he complains. It seems unfair to require the State to potentially incur two expenses: Prince’s transportation to Nevada for sentencing and then back again to Arizona for completion of his sentence of imprisonment, all in order to timely sentence him when he is the source of his own problems. It seems fiscally prudent to require the State to finance no more than a one-way ticket to Nevada when, as here, a defendant has entered a plea of guilty and then failed to appear for sentencing.
 

 Accordingly, we adopt the reasoning of
 
 Carchman.
 
 We determine that the plain language of the Agreement does not include sentencing hearings within its scope. We further determine that the purpose of the act is not furthered by extending the Agreement’s reach to sentencing hearings. Therefore, we hold that the Agreement does not apply to sentencing hearings. Prince’s rights under the Agreement were not violated by the State’s decision not to transport him to Nevada for sentencing within 180 days of his demand.
 

 Prince next complains that the delay between his guilty plea and sentencing violated his Sixth Amendment right to a speedy trial. Although the United States Supreme Court has never directly addressed the issue, it has suggested that sentencing may be a part of a trial for Sixth Amendment purposes.
 
 [22]
 
 Several courts have either assumed or held that the constitutional right to a speedy trial extends to sentencing proceedings.
 
 [23]
 

 We need not decide this issue. Even were we to assume the Sixth Amendment’s applicability to sentencings, Prince would not be entitled to relief. As noted in
 
 State v. Burkett,
 
 the inquiry as to whether or not a Sixth Amendment violation exists consists of the application of the four-part test enunciated in
 
 Barker v. Wingo,
 
 balancing the “[l]ength of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.’ ’
 
 [24]
 

 
 *641
 
 Application of the
 
 Barker
 
 factors does not result in a conclusion that a constitutional violation has occurred. Although the delay was long and Prince asserted his speedy trial right long before sentencing, the delay was largely Prince’s fault for absconding. Also, the prejudice to Prince is minimal. Prejudice generally derives from (1) oppressive pre-trial incarceration, (2) anxiety and concern caused by excessive confinement and delay, or (3) impairment to the defendant’s ability to present a defense.
 
 [25]
 
 Obviously, Prince would have remained incarcerated in Arizona regardless of the existence of the Nevada case, and his guilty plea negates concerns about his ability to present a defense. The degree of anxiety caused by delay here is insubstantial, considering that Prince was already imprisoned on a separate conviction.
 
 [26]
 
 Under these circumstances, no speedy trial violation could be found, even assuming the applicability of the Sixth Amendment to sentencing proceedings.
 

 Prince’s final argument is that the delay in sentencing violated his due process rights, as well as his right to sentencing without unreasonable delay under NRS 176.015(1).
 
 [27]
 
 Prince treats NRS 176.015(1) as a codification of the due process right. The due process analysis for unreasonable delay in bringing a defendant to trial generally follows the
 
 Barker
 
 test.
 
 [28]
 
 As previously discussed, application of the
 
 Barker
 
 test does not result in the conclusion of a constitutional violation here.
 

 Delay in sentencing that is not purposeful or oppressive on the part of the government does not violate a defendant’s due process rights.
 
 [29]
 
 The delay here was instigated by Prince’s failure to appear for sentencing. Further, it appears that the State reasonably opposed extradition and sentencing in absentia consistent with the conclusion of most of the jurisdictions which have addressed the question of the Agreement’s application to a defendant awaiting sentencing.
 

 
 *642
 
 Prince cites to cases where the government either delayed adjudicating guilt,
 
 [30]
 
 or waited an unreasonable length of time to obey a court order to bring the defendant to sentencing.
 
 [31]
 
 Here, in contrast, Prince previously pleaded guilty, and the State did not delay in responding to a court order. Accordingly, neither Prince’s due process right nor his statutory right to sentencing within a reasonable time were violated.
 

 CONCLUSION
 

 The Interstate Agreement on Detainers does not apply to defendants who have been adjudicated guilty, and are awaiting sentencing. Because the delay here did not violate Prince’s rights under the Agreement or other constitutional or statutory rights, we affirm the judgment of conviction.
 

 Young and Leavitt, JJ., concur.
 

 [1]
 

 NRS 178.388(2)(b).
 

 [2]
 

 NRS 178.620.
 

 [3]
 

 See id.
 

 [4]
 

 NRS 178.620, Art. III(a);
 
 State
 
 v.
 
 Wade,
 
 105 Nev. 206, 208, 772 P.2d 1291, 1293 (1989).
 

 The four conditions are:
 

 (1) the defendant has entered upon a term of imprisonment in a penal or correctional institution of a party State, (2) during the continuance of that term of imprisonment the charges in question are pending against the defendant in another party State, (3) a detainer based on such charges has been lodged against the defendant, and (4) the defendant has caused written notice and request for final disposition of the charges to be delivered to the appropriate prosecuting authorities and court.
 

 United States v. Hutchins,
 
 489 F. Supp. 710, 713 (N.D. Ind. 1980),
 
 quoted in Wade,
 
 105 Nev. at 208, 772 P.2d at 1293.
 

 [5]
 

 NRS 178.620, Art. V(c).
 

 [6]
 

 See Snyder
 
 v.
 
 Sumner,
 
 960 F.2d 1448, 1452 (9th Cir. 1992).
 

 [7]
 

 718 F.2d 308 (9th Cir. 1983).
 

 [8]
 

 678 F. Supp. 858 (M.D. Fla. 1987).
 

 [9]
 

 718 F.2d at 311.
 

 [10]
 

 678 F. Supp. at 861-62.
 

 [11]
 

 Id.
 
 at 862.
 

 [12]
 

 See State v. Burkett,
 
 876 P.2d 1144, 1146 (Ariz. Ct. App. 1993); (“Nearly all jurisdictions that have considered whether the [Agreement] applies to sentencing detainers have concluded that it does not.”);
 
 see also People v. Castoe,
 
 150 Cal. Rptr. 237 (Ct. App. 1978);
 
 Moody v. Corsentino,
 
 843 P.2d 1355 (Colo. 1993);
 
 State
 
 v.
 
 Sparks,
 
 716 P.2d 253 (N.M. Ct. App. 1986);
 
 People v. Randolph,
 
 381 N.Y.S.2d 192 (Sup. Ct. 1976);
 
 State
 
 v.
 
 Barnes, 471
 
 N.E.2d 514 (Ohio Ct. App. 1984);
 
 see generally U.S.
 
 v.
 
 Coffman,
 
 905 F.2d 330 (10th Cir. 1990);
 
 People
 
 v.
 
 Barnes,
 
 287 N.W.2d 282 (Mich. Ct. App. 1979); State
 
 v. Lewis,
 
 422 N.W.2d 768 (Minn. Ct. App. 1988).
 

 [13]
 

 473 U.S. 716 (1985).
 

 [14]
 

 Id.
 
 at 724 (citation omitted).
 

 [15]
 

 Id.
 
 at 726.
 

 [16]
 

 Id.
 
 at 724-30.
 

 [17]
 

 Id.
 
 at 732-33.
 

 [18]
 

 See State v. Barefield,
 
 756 P.2d 731, 733 (Wash. 1988) (noting that the
 
 Carchman
 
 decision calls the
 
 Tinghitella
 
 decision into question);
 
 State v. Grzelak,
 
 573 N.W.2d 538, 540 (Wis. Ct. App. 1997) (criticizing
 
 Tinghitella
 
 as inharmonious with the principles espoused in
 
 Carchman)', see also supra
 
 note 12.
 

 [19]
 

 See Burkett,
 
 876 P.2d at 1148.
 

 [20]
 

 See id.
 

 [21]
 

 See id.
 
 at 1149.
 

 [22]
 

 See Pollard v. United States,
 
 352 U.S. 354 (1957) (assuming arguendo that sentencing is a part of trial under the Sixth Amendment).
 

 [23]
 

 See State v. Burkett,
 
 876 P.2d 1144, 1149 (Ariz. Ct. App. 1993) (citing cases extending speedy trial right).
 

 [24]
 

 407 U.S. 514, 530 (1972).
 

 [25]
 

 See id.
 
 at 532.
 

 [26]
 

 But see State
 
 v.
 
 Erenyi,
 
 85 Nev. 285, 288, 454 P.2d 101, 103 (1969) (noting that anxiety caused by untried detainers can interfere with a prisoner’s rehabilitation).
 

 [27]
 

 NRS 176.015(1) provides, in part: “Sentence must be imposed without unreasonable delay.”
 

 [28]
 

 See Burkett
 
 v.
 
 Fulcomer,
 
 951 F.2d 1431 (3d Cir. 1991);
 
 see also Barker,
 
 407 U.S. at 536 (discussing due process rights).
 

 [29]
 

 Pollard,
 
 352 U.S. at 361;
 
 State
 
 v.
 
 McRoy,
 
 85 Nev. 406, 408, 455 P.2d 918, 919 (1969).
 

 [30]
 

 See State
 
 v.
 
 Adler,
 
 942 P.2d 439, 441 (Ariz. 1997).
 

 [31]
 

 See People
 
 v.
 
 Jones,
 
 282 N.E.2d 248, 250 (Ill. Ct. App. 1972);
 
 Randall
 
 v.
 
 Eyman,
 
 425 P.2d 570 (Ariz. 1967).